Ronald H. TOBIAS, Appellant,

v.

STATE of Indiana, Appellee.

No. 1283S451.

Supreme Court of Indiana.

June 18, 1985.

Rehearing Denied Aug. 19, 1985.

J.J. Paul, III, James H. Voyles, Ober, Symmes, Cardwell, Voyles & Zahn, Indianapolis, Cecile Blau, Jeffersonville, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Ronald H. Tobias was found guilty by a jury in the Clark Circuit Court of class A felony dealing in a narcotic drug and was sentenced by the trial judge to a term of thirty years imprisonment. He now raises five issues for our review in this direct appeal as follows:

1. denial of Appellant's Motion to Suppress Evidence;

2. sufficiency of the evidence;

3. abuse of discretion by the trial court in permitting the State to reopen its case to present additional evidence;

4. prosecution of Appellant under the wrong statute since he was a pharmacist; and

5. improper sentencing.

The facts adduced at trial show that Appellant worked in his father's business, the B & T Pharmacy, in Charlestown, Indiana, as a pharmacist during March, 1982. Two employees of the lunch counter in the Pharmacy observed unusual activities occurring at the drugstore with respect to Appellant and Paul Sherrill. The employee-informants noted that Appellant and Sherrill had meetings in the soda fountain portion of the pharmacy on several occasions after which Sherrill and Appellant would visit the customer's restroom in succession. There were two restrooms in the drugstore: a public restroom adjacent to the lunchroom and a private restroom used only by employees of the store. It therefore was unusual for Appellant to go to the public restroom following his meeting with Sherrill since ordinarily he used the employee's restroom. On March 30, 1982, one of the employees observed Appellant and Sherrill meet and, after Sherrill visited the restroom, the informant walked into the restroom, stood on the commode, raised the ceiling tile and found $1000.00, two prescriptions and a pill vial. Indiana State Police Detective Jerrill was apprised of this information by Chief McDonald of the Charlestown Police Department on April 5, 1982. Jerrill immediately began surveillance of the pharmacy and also checked the ceiling tile space in the customer restroom only to find a teen rock and roll magazine concealed there. On April 8, 1982, Jerrill was advised by the employee-informants that Appellant and Sherrill had again met and followed their regular routine. The informant visited the restroom after Sherrill had departed there and found a pill vial, a prescription script and several hundred dollars in the ceiling space. Appellant next entered the restroom, then departed. The informant checked the ceiling tile space and noted that the money and script were no longer there. Jerrill continued his investigation on April 13, 1982, and went into the customer restroom of the pharmacy, pushed up the ceiling tile and found a magazine and empty pill vial. The ceiling tiles were laid upon a suspended grid framework and were of a solid material so that one could not see through them when looking up from the floor. That afternoon, Jerrill and Detective Ball returned to the pharmacy and checked the restroom but saw only the empty pill vial. Jerrill maintained his observation of the pharmacy and later noted that Sherrill exited the rear door of the pharmacy at about 3:30 p.m. Detective Ball and Jerrill thereafter entered the soda fountain of the pharmacy and Jerrill checked the ceiling of the restroom where he found a box containing nine one-hundred dollar bills and a prescription script drafted in the name of "Jewell Samples." Jerrill copied some of the serial numbers from the bills on an index card while Ball copied down the other serial

numbers. The employee was instructed by Jerrill to see if any change occurred during the evening hours. The next morning, Indiana State Trooper Dean checked the ceiling and found a vial of pills from which one was removed and given to Jerrill for identification purposes. A field analysis produced a conclusion that the pill was a four milligram Dilaudid tablet. Later, on April 14, 1982, Sherrill again entered the pharmacy. When he emerged, Trooper Dean arrested Sherrill and removed the Dilaudid pills from his person. A search warrant was issued and was served on Appellant that afternoon. The items specified in the warrant, the one-hundred dollar bills and the "Samples" prescription form, were recovered from the person of Appellant at the time of his arrest.

## I

Appellant claims the trial court erred in denying his Motion to Suppress testimony and evidence obtained by law enforcement officials by pushing up a ceiling tile in the customer's restroom of the pharmacy where Appellant worked. Appellant asserts the police activities in this respect amounted to an intrusion into an area in which he had an expectation of privacy and thus the searches resulted in a violation of his Fourth Amendment, United States Constitutional right to be free from unreasonable searches and seizures. We disagree.

The initial inquiry in the case of an alleged violation of a Fourth Amendment right is whether the complainant has standing to assert a violation of his or her rights by virtue of his or her status as a victim of the Government's illegal conduct. The United States Supreme Court has held that to determine the question of an individual's standing for Fourth Amendment purposes, the test is whether the defendant can demonstrate a legitimate expectation of privacy in the area subject to the governmental intrusion. *See generally United States v. Salvucci,* (1980) 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619; *Rawlings v. Kentucky,* (1980) 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633; *Pollard v. State,*

(1979) 270 Ind. 599, 388 N.E.2d 496. In *United States v. Britt,* (5th Cir.1975) 508 F.2d 1052, *cert. denied* 423 U.S. 825, 96 S.Ct. 40, 46 L.Ed.2d 42, the Fifth Circuit, Federal Court of Appeals considered this issue when deciding whether Defendant Britt had standing to challenge the validity of a search and seizure at a corporate premises merely because Britt was president of the corporation. The documents seized without a warrant were normal corporate records not prepared personally by Britt and found in an area described as a "storage area." The Fifth Circuit found that the evidence indicated that Britt had not spent any of his time working in the storage area nor in any other space at the actual situs of the search and seizure. The Fifth Circuit further found that Britt was not a "person aggrieved" by the search and seizure and therefore did not have standing to object to it. This holding was based on the fact that the seized documents were not taken from Britt's personal working area and that the search was directed against corporate activity and not against Britt personally. The Fifth Circuit distinguished the situation in *Britt* from that of *Henzel v. United States,* (5th Cir.1961) 296 F.2d 650, where it was apparent that the seized items, largely prepared by Henzel, were taken from the personal office of Henzel when he was temporarily absent. The Fifth Circuit further found that in *Henzel,* as in *Mancusi v. DeForte,* (1968) 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154, there was a demonstrated nexus between the area searched and the work space of the defendant. That nexus, of course, was found to be absent in *Britt* and is also absent here in regard to Appellant. The area searched in Appellant's case was a public restroom in which Appellant had no reasonable expectancy of privacy since the only time this area was visited by Appellant was for the purpose of making the instant drug transactions.

We further agree with the State that under the peculiar facts of this case, the monitoring technique utilized by the police here equalled a form of exigent cir-

cumstances which justified the delay in the execution of a search warrant to prevent Appellant from removing the prescription drugs from the restroom ceiling and from the consummation of the transaction. This was true since it was necessary to monitor the transactions between Appellant and Sherrill in order to prove a completed transaction because their exchange was not done personally, hand to hand. Furthermore, it was necessary to show the nature of these transactions since mere possession of the drugs by Appellant would not be probative since he was a pharmacist. For all of these reasons we find that the trial court did not err in denying the motion to suppress.

## II

■ Appellant further claims there was inadequate proof to establish that he delivered controlled substances in an amount of three grams or more since, he claims, only the pure and unadulterated portion of the pills seized by police may be utilized for purposes of proof of the weight of the substance in question. This issue has already been decided by this Court adverse to Appellant's position. *Lawhorn v. State,* (1983) Ind., 452 N.E.2d 915; *Romack v. State,* (1983) Ind.App., 446 N.E.2d 1346. The total weight of the delivered drug and not its pure component is to be considered in prosecutions under Ind.Code § 35–48–4–1 (Burns 1985).

## III

■ Appellant further argues that the trial court abused its discretion by permitting the prosecution to reopen its case and provide additional testimony on the weight of the controlled substance. During the trial, George Smith, a chemist, testified about the weight of the pills involved in this case and said that one Dilaudid tablet weighed from .07 to .09 of a gram and that the total weight of 98 pills equalled 7 to 8 grams. Detective Jerrill testified about the weighing of the pills seized from Sherrill at the time of his arrest. After both parties had rested, the State recalled Jerrill to further testify about the weighing of these same pills. The record shows that both parties were provided ample opportunity for further examination of witness Jerrill. Jerrill's testimony therefore elaborated upon a fact already before the court and the jury since Jerrill and Smith already had talked about the pills and their weight extensively during the State's case-in-chief. It does not appear, therefore, that Jerrill's additional testimony was unduly emphasized before the jurors and Appellant shows no prejudice by the trial court's action in permitting the State to reopen for that purpose. *See Gorman v. State,* (1984) Ind., 463 N.E.2d 254. We find no error.

## IV

■ Appellant next contends that he could not be charged, tried, and convicted of the crime of dealing pursuant to Ind. Code § 35–48–4–1 since he is a registered pharmacist. Instead, he argues, he should have been charged with the offense defined in Ind.Code § 35–48–4–14 (Burns 1985) which makes it a crime for a registered pharmacist to distribute controlled substances in a manner not authorized by his or her registration. Ind.Code § 35–48–4–14(a)(2) implies, however, a separate crime as it involves the violation of rules governing the regulation of pharmacists who dispense drugs. A pharmacist, after all, would have an absolute defense to an information predicated on Ind.Code § 35–48–4–1 if it were shown that he or she was duly licensed and dispensed controlled substances as required by his or her registration or by valid prescription. This was not the fact here. There is no language in Ind.Code § 35–48–4–1 that prohibits the charging of a pharmacist with this offense. Under the facts in this case, Appellant was properly charged and convicted and there is no merit to his contentions to the contrary.

## V

■ Finally, Appellant claims the trial court abused its discretion by sentencing him to the presumptive term of thirty years for a class A felony since thirty years was

manifestly unreasonable concerning the nature of his offense and his character. This Court has held: "When the trial court imposes the basic sentence prescribed by a particular criminal statute, this Court presumes compliance with Ind.Code § 35–4.1–4–7 [§ 35–50–1A–7 (Burns 1979)] regardless of whether or not the record includes the trial court's specific enumeration of any aggravating and mitigating factors." *Horne v. State,* (1983) Ind., 445 N.E.2d 976, 983, *reh. denied.* Moreover, this Court is not required to conduct a review of the sentencing hearing for the purpose of reweighing the lower court's findings concerning mitigating and aggravating circumstances when the presumptive sentence is given since the discretion for sentencing is with the trial court subject to abuse of that discretion and a finding of unreasonableness. *Bish v. State,* (1981) Ind., 421 N.E.2d 608, *reh. denied.* No grounds are presented here for showing that Appellant's sentence was manifestly unreasonable and therefore we find no judicial abuse of discretion.

Finding no error, we affirm the trial court.

GIVAN, C.J., and DeBRULER, J., concur.

PRENTICE, J., concurs and dissents with separate opinion.

HUNTER, J., not participating.

PRENTICE, Justice, concurring and dissenting.

I concur in the opinion of the majority insofar as it affirms the conviction of Defendant for delivery of a narcotic drug. I am persuaded, however, that the evidence supports only a conviction for such crime as a class B felony. The opinion of the majority correctly cites our earlier cases holding that whether or not enhancement of the basic offense from a class B felony to a class A felony is controlled by the weight of the entire substance delivered, in cases where the contraband drug was delivered in an adulterate form, rather than by the weight of the contraband drug in pure form, contained in the substance delivered. This viewpoint was first adopted in *Hall v. State* (1980), 273 Ind. 425, 403 N.E.2d 1382 and has been followed in later cases, in all of which I concurred. Upon further reflection, however, I am of the opinion that we have been in error.

In *Hall, supra,* we premised our decision upon a determination that the antecedent of the word "drug," in that portion of the statute determining the classification of the crime, was "narcotic drug, pure or adulterated" as used in the earlier portion of the statute defining the offense. That determination ignores a basic tenet of statutory construction requiring penal statutes to be strictly and narrowly construed and defies logic.

The obvious purpose of the statute is to deter dealing in narcotic drugs. Surely no one can dispute that if delivery of a small quantity of the drug is an evil warranting punishment, the delivery of a greater quantity must be a greater evil and warrant a greater punishment; and therein lies the logic of a statute extracting a greater penalty from one delivering a quantity of the contraband in excess of three grams than is imposed upon one delivering a lesser quantity. Yet, under the *Hall* decision the penalty is determined by the quantity of the substance, both drug and adulterant, delivered rather than by the quantity of the drug delivered. Hence it is a greater offense to deliver .1 gram of a narcotic drug mixed with 2.9 grams of some substance which is not, in and of itself, contraband than it is to deliver 2.9 grams of the pure drug. I simply cannot ascribe such anomaly to the legislative intent.

Accordingly, I would overrule *Hall* and its progeny and remand the cause to the trial court with instructions to modify the judgment in accordance with this opinion.

HUNTER, J., not participating.