David L. EVANS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 18A04–9005–CR–237.

Court of Appeals of Indiana,
Fourth District.

Feb. 13, 1991.

Geoffrey A. Rivers, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

CHEZEM, Judge.

### Case Summary

Defendant–Appellant, David L. Evans, appeals from his conviction by jury for Possession of Cocaine (class C felony). We affirm.

### Issues

Defendant presents six (6) issues for our review, which we consolidate and restate as follows:

I.  Whether the trial court erred when it denied Defendant's Motion to Suppress.

II.  Whether there was purposeful racial discrimination in the selection of the jury.

III.  Whether the prosecutor established a proper foundation and sufficient chain of custody for State's Exhibits 1, 2, and 3.

IV. Whether there was sufficient evidence to support the conviction for Possession of Cocaine.

### Facts

Mark Craig and Kirk Mase are police officers who work for the Muncie Police Department. At approximately 2:30 a.m. on August 31, 1989, they were patrolling together in their police car near the intersection of Adams and Madison in Muncie, Indiana, when they heard gunshots and also saw "muzzle flashes" reflected off the side of a nearby building. The officers immediately proceeded to the area of the gunshots and observed a car "backing down the street at a high rate of speed with it's [sic] lights off." They stopped the car and started to search the driver—Defendant. During the "pat down," Defendant indicated he wanted to "get my money," so he "reached down into his sock, grabbed a wad of money, and tossed a thirty-five millimeter [35mm] film canister to the side." The canister was immediately retrieved by Officer Craig, who opened it and found "several chunks of a greyish white or brownish white material," or what appeared to be "crack cocaine." They arrested the Defendant.

### Discussion and Decision

### I

Defendant first argues that the trial court erred in denying his Motion to Suppress. In essence, that motion asserted "[t]he detention, arrest, and seizure of the Defendant was without probable cause, without a warrant, without consent, and was, therefore, illegal," and it sought to exclude from trial "evidence of the cocaine and testimony concerning it." Defendant relies heavily upon his own testimony that he "[immediately] told the officers he was a victim; that a man named Isom was shooting at him [and he] even pointed Isom out to the police [at the scene]."

■ The law is clear that automobile drivers are protected from "unreasonable searches and seizures." *Gipson v. State* (1984), Ind., 459 N.E.2d 366, 368. In addition, "evidence discovered following an illegal stop of an automobile is subject to exclusion as 'fruit of the poisonous tree.'" *Williams v. State* (1989), Ind.App., 543 N.E.2d 1128, 1129; *See also, Poling v. State* (1987), Ind., 515 N.E.2d 1074, 1077.

■ However, the law is equally clear that a police officer may make an initial or investigatory stop of a person or automobile under circumstances where probable cause for arrest is lacking when the facts known to the officer at the time of the stop are such as to warrant a man of reasonable caution to believe an investigation is appropriate. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968); *Russell v. State* (1988), Ind., 519 N.E.2d 549, 551. As the U.S. Supreme Court noted in *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."

■ Moreover, once an automobile has been stopped for investigative purposes, the officer may conduct a search for weapons, without first obtaining a search warrant, if the officer reasonably believes that he or others may be in danger. *Gann v. State* (1988), Ind., 521 N.E.2d 330, 333. Any items discarded by the driver at the scene are subject to seizure by police (and are admissible at trial) provided the stop is a lawful one. *See, Gipson*, 459 N.E.2d at 367; *State v. Smithers* (1971), 256 Ind. 512, 269 N.E.2d 874, 876.

■ In the present case, the officers were justified in making an investigatory stop of the Defendant. The officers testified that they were on patrol together when they heard gunshots and saw "muzzle flashes" off the side of a building at approximately 2:30 a.m. on August 31, 1989. They immediately went to the area of the gunshots and observed a car driving backwards down the street at a high rate of speed with its headlights turned off. The officers stopped the car and searched the Defendant. During the search, Defen-

dant tossed away a film canister, which was immediately recovered by the officers. That canister contained what they believed to be "crack cocaine." Under these facts and circumstances, the trial court properly denied the Motion to Suppress.

## II

Defendant next argues that "[t]he State denied [him] equal protection by striking the black jurors on the venire." In particular, he argues "the [trial] [c]ourt erred in overruling [his] objection to the [S]tate's discriminatory use of peremptory challenges to exclude blacks from the jury." We disagree.

The record shows that there were only two blacks present for *voir dire*—Barry Cooper and Michael Young. The prosecutor exercised two of his peremptory challenges in an attempt to strike these men from the jury. This brought an immediate objection from Defendant. The trial court then asked whether there were any particular reasons for striking Cooper and Young. The prosecutor replied that he was concerned with the relationship between Cooper and the Defendant. Cooper indicated that he had been friends with Defendant, but that he had not seen him for several years. With respect to Young, the prosecutor indicated that he was "unsure whether Mr. Young feels like or wants to accept the responsibility of making a decision in this case." After hearing arguments of counsel, the court granted the peremptory challenge as to Cooper but denied the one directed towards Young. Young was on the final jury which heard the case.

■■■ The law is well-established that a black defendant is denied equal protection of the law when he is put on trial before a jury from which members of his own race have been purposefully excluded. *E.g., Strauder v. West Virginia,* 100 U.S. 303, 305, 25 L.Ed. 664 (1880); *Batson v. Kentucky,* 476 U.S. 79, 85–86, 106 S.Ct. 1712, 1716–17, 90 L.Ed.2d 69 (1986). To establish a *prima facie* case of purposeful discrimination in the selection of a jury, the defendant must satisfy the following three-prong test: (1) he is a member of a cognizable

racial group; (2) the prosecutor has peremptorily challenged members of the defendant's race; and (3) these facts and other relevant circumstances raise an inference that the prosecutor excluded prospective jurors because of their race. *Batson,* 476 U.S. at 96–98, 106 S.Ct. at 1722–24; *Weekly v. State* (1986), Ind., 496 N.E.2d 29, 31; *Phillips v. State* (1986), Ind., 496 N.E.2d 87, 88–89. Once the defendant makes a *prima facie* showing, the burden shifts to the prosecutor to come forward with a neutral explanation for challenging the black jurors. The trial court will then have the duty to determine whether the defendant has established purposeful discrimination. *Id.*

■■■ The facts and circumstances of this case do *not* indicate purposeful racial discrimination. While the attempted striking of the only two prospective black jurors may have initially raised an inference of racial discrimination, that inference was defeated when the prosecutor provided race-neutral reasons for peremptorily challenging Cooper and Young. The prosecutor stated that he was concerned about the friendship that had once existed between Cooper and the Defendant. With respect to Young, the prosecutor expressed his concern that Young may be uncomfortable making a decision as to this case. We also note that these race-neutral reasons need not rise to the level of a challenge for cause. *Phillips,* 496 N.E.2d at 89. The trial court did not err with respect to this issue.

## III

Defendant next argues the trial court erred in admitting into evidence State's Exhibits 1, 2, and 3. He states that "a proper foundation had not been established and a chain of custody had not been established." We disagree.

■■■ With respect to chain-of-custody, we note the law requires that an adequate foundation be laid showing the continuous whereabouts of the exhibits beginning with the time they came into the possession of police. *Wray v. State* (1989), Ind., 547

N.E.2d 1062, 1066. "The State must only present evidence which strongly suggests the whereabouts of the exhibits at all times." *Id.* The prosecutor need not provide evidence excluding all possibility of mishap or tampering, but need provide only reasonable assurance that the exhibits passed through various hands in an undisturbed condition. *Livingston v. State* (1989), Ind., 544 N.E.2d 1364, 1371 (citing *Simmons v. State* (1987), Ind., 504 N.E.2d 575, 578). Also, a proper chain-of-custody can be established without the testimony of every person who handled the exhibits. *Id.*

Obviously, the purpose of the rule is to avoid any claims of substitution, tampering or mistake. *Rondon v. State* (1989), Ind., 534 N.E.2d 719, 725, *reh. denied.* If a defendant's argument does no more than raise the possibility of such occurring, then it is without merit. *Berry v. State* (1990), Ind.App., 561 N.E.2d 832, 838.

The testimony at trial provided the "reasonable assurance" required for a proper chain-of-custody for State's Exhibits 1, 2, and 3. That testimony established that Officer Craig put the film canister (State's Exhibit 2) into a sealed envelope (State's Exhibit 1) which was placed in the police department's property room; that Sergeant David Eiler then opened the envelope and transferred the substance in the film canister to another sealed envelope (State's Exhibit 3) in order to comply with the packaging requirements of the state police laboratory; that the envelope was then delivered to the police lab; that a chemist at the lab (Troy Ballard) broke the seal and removed a sample for analysis; that the resealed envelope was then picked up and returned to the police department's property room; and that the exhibits remained there until trial.

Defendant also claims that the exhibits were not sufficiently identified by witnesses at trial. This argument is without merit. Defendant has ignored and mischaracterized pertinent portions of the testimony provided by Officer Craig, Sergeant Eiler, and the police chemist—Ballard. The transcript of the trial shows the exhibits *were* sufficiently identified. We find no error as to this issue.

## IV

The last argument has to do with whether there was sufficient evidence to establish that the substance found in the film canister weighed "3 grams or more." Defendant claims the evidence was insufficient in this respect, and thus the verdict is contrary to the facts and law, and the trial court erred in denying his Motion for Directed Verdict of Not Guilty. In particular, he claims the evidence did not establish "that there were three grams or more of cocaine present."

The record shows that the rock-like chunks found in the film canister were examined at the police lab by Ballard. He determined the chunks weighed 7.4 grams. He then removed one chunk, or "representative sample," and conducted tests which revealed the presence of high levels of cocaine. Ballard's opinion was that the sample he tested had "in excess of ninety percent cocaine."

Defendant was charged and tried by jury for Possession of Cocaine (class C felony) under Ind.Code 35–48–4–6, which states:

*Possession of cocaine or narcotic drug.*

(a) A person who, without a valid prescription or order of a practitioner acting in the course of his professional practice, knowingly or intentionally possesses cocaine (pure or adulterated) or a narcotic drug (pure or adulterated) classified in schedule I or II commits possession of cocaine or a narcotic drug, a Class D felony, except as provided in subsection (b).

(b) The offense is:

(1) a Class C felony if the amount of the drug involved (pure or adulterated) weighs three (3) grams or more;

Defendant has miscontrued the clear and unambiguous language of I.C. 35–48–4–6. The gist of his argument is that the evidence was insufficient because Ballard did not test each chunk; he tested only one for the presence of cocaine. Therefore, the other chunks could have been anything,

including baking soda, sugar, sucrose, or starches. But this argument ignores the statute's language: that "[t]he offense is ... a Class C felony if the amount of the drug involved (pure or adulterated) weighs three (3) grams or more." Of course, the key word here is "adulterated." The statute clearly allows the presence of impurities or other substances to be considered in determining the weight of confiscated drugs, or in reaching the threshold of 3 grams. Thus, the fact that the chemist did not test each chunk from the film canister is irrelevant.

We also note that Defendant has based his argument in large part on *Hutcherson v. State* (1978), 178 Ind.App. 8, 381 N.E.2d 877, *reh. denied, trans. denied.* There, the court indicated that the phrase "aggregate weight" in the statute was not meant to include non-controlled substances. But this case interpreted I.C. 35–48–4–6 *before* it was amended by our Legislature in 1983. That amendment deleted "aggregate weight" and added "pure or adulterated." This brought the "possession statute" into accord with the "dealing in cocaine statute," which already set forth the phrase "pure or adulterated." *See,* I.C. 35–48–4–1.

With respect to the "dealing statute," the Indiana Supreme Court has stated that "[t]he total weight of the delivered drug and not its pure component is to be considered in prosecutions under Ind.Code § 35–48–4–1." *Tobias v. State* (1985), Ind., 479 N.E.2d 508, 511, *reh. denied. See also, Clark v. State* (1989), Ind., 539 N.E.2d 9, 12; *Allison v. State* (1988), Ind.App., 527 N.E.2d 234, 238, *trans. denied.*

We hold the evidence sufficient. The verdict was not contrary to the facts and law, and the trial court did not err when it denied Defendant's Motion for Directed Verdict of Not Guilty.

Affirmed.

CONOVER and STATON, JJ., concur.