Sean POULTON, Appellant,

v.

STATE of Indiana, Appellee.

No. 10S00–9412–CR–1206.

Supreme Court of Indiana.

May 29, 1996.

Dawn R. Elston, Chief Public Defender, Jeffersonville, for Appellant.

Pamela Carter, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Office of the Attorney General, Indianapolis, for Appellee.

ON DIRECT APPEAL

DeBRULER, Justice.

Appellant was found guilty in the Clark Circuit Court of Murder and Robbery (Class B felony) in a jury trial. The trial court sentenced appellant to forty years on the Murder conviction with twenty years added for aggravating circumstances and ten years on the Robbery conviction. The sentences are to be served consecutively for a total of seventy years. This is a direct appeal. Ind. Appellate Rule 4(A)(7).

Appellant claims that his convictions should be reversed and a new trial granted because the trial court erred in:

(1) admitting appellant's statements to the police;

(2) denying one of appellant's motions to continue the jury trial; and

(3) sentencing appellant to a seventy year term.

### Facts

On the evening of December 8, 1993, appellant and his stepbrother, Daniel Howard, were driving past Vincent Stemle's home in Clarksville, Indiana. As they drove, appellant told Howard of some of the things Mr. Stemle kept in his house. Believing Stemle's home empty, they planned to rob the house and went home to get gloves to prevent fingerprints. When they returned to the house, however, they discovered that Stemle was home. Together they hatched a plan: appellant, who had talked to Stemle on several occasions, would ask to use his phone as a ruse to gain entry into the house. When inside, Howard would look around and "scope it out."

Appellant and Howard approached Stemle's home. When Stemle answered the door, appellant asked if he could use the phone. Appellant introduced Howard as "Dan," his brother. Upon entering the home, they noticed that Stemle was armed with a gun and that there was an alarm on the door. Howard then overpowered Stemle and wrestled him to the floor. Meanwhile, appellant rummaged through the house, grabbing money, guns, three rings, and some costume jewelry. Howard, for his part, continued to attack Stemle. He stepped on Stemle's neck, jumped on his upper chest, and strangled Stemle with a telephone cord. When he finished ransacking the house, appellant also kicked Stemle in the head. During the struggle, Howard said, "This man had the strongest will to live of anybody I ever knew." Appellant asked Howard what he meant. Howard responded, "He doesn't want to die." He then told appellant, "If you think your part was hard, you ought to try kneeling down above a guy while you're choking him and your hands are numb." Once Stemle had succumbed, appellant rolled his body over to take money from Stemle's wallet.

After the pair left the house, Howard fenced all but one of the guns and appellant fenced two of the victim's rings. They also disposed of one of the guns, the phone cord used to strangle Stemle, a wedding ring, and some costume jewelry taken in the robbery.

Appellant was arrested on December 13, 1995. On that day and the following day, he gave two statements to Detectives Gary Hall and Joseph Craig of the Clarksville police.

Before trial, defense counsel moved to suppress both statements. The trial court held a hearing out of the jury's presence. When defense counsel asked Detective Hall to recount his precise warning for the first statement, he failed to mention the third *Miranda* warning: that any statement made by an accused could and would be used against him in court. Detective Craig, however, testified that Hall did give the complete set of *Miranda* warnings. Later, during the trial itself, Hall also testified that he did give appellant the complete *Miranda* warning and mentioned that his previous difficulty in recalling the set of warnings was due to his nervousness while testifying.

Appellant also testified at the motion to suppress hearing, however, and claimed that Detective Hall failed to warn him that his statements could be used against him before the first statement was taken. During the trial itself, appellant testified that he could not remember if he had been given the full set of *Miranda* warnings or not.

Hall's testimony at the motion hearing and at trial, however, revealed that appellant was orally advised of his *Miranda* rights on his first day of questioning and signed a written waiver of his *Miranda* rights before making his second, more complete statement. The *Miranda* warnings for the second statement were also recorded on audio tape. Defense counsel argued at the motion hearing that the first statement was taken in violation of appellant's Fifth Amendment and state constitutional rights and that the incomplete warning for the first statement "tainted" the second statement, rendering it inadmissible as well.

The trial court denied appellant's motion to suppress. When the State offered the two

statements into evidence during trial, the trial court each time asked defense counsel whether appellant wished to object. Both times defense counsel responded that he had no objection to the admission of the statements.

Dr. Sandra Hollensead, a pathologist, testified that Stemle died of a fractured larynx, which had been crushed. Her examination of the body also revealed that the victim had suffered a large skull fracture along the base and the right side of the skull, which was itself a lethal injury. She also noted that the marks appearing on his neck could have been caused by a string or cord applied with medium force. His other injuries, including the crushed larynx, crushed hyoid bones, fractures of the nasal bridge, and skull fractures were caused by heavy force, such as hitting the head or throat with a heavy object, hitting the head against a fixed object, or stomping.

### Admission of Appellant's Statements

Appellant claims that the trial court's admission of his two statements to the police violated the Fifth Amendment guarantee against self-incrimination.[1] *See* U.S. Const. amend. V; *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In his brief, more specifically, appellant claims that the first statement he made during custodial interrogation was made without a complete set of *Miranda* warnings and that failure also tainted the admission of his second statement in violation of his Fifth Amendment rights. In his motion to suppress, appellant claimed more generally that he was not given *Miranda* warnings before the December 13 statement and that he "was not aware that anything he said could and would be used against him at trial." Thus, appel-

lant claims, his convictions should be reversed.

■ With only limited exceptions, *Miranda* and its progeny hold that an accused's statements stemming from an custodial interrogation are inadmissible as substantive evidence at trial unless the State proves that the police used procedural safeguards effective to secure the Fifth Amendment privilege against self-incrimination. U.S. Const. amend. V; *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612; *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).[2] Absent other fully effective means adopted to notify the accused of his right of silence and to assure that the exercise of the right will be scrupulously honored, the accused must be warned

> prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warning and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

*Miranda*, 384 U.S. at 479, 86 S.Ct. at 1630. When an appellant claims that a trial court admitted his custodial statements made without sufficient *Miranda* warnings, however,

---

**1.** There is no distinct argument that the statements were actually coerced in the sense of the Due Process clause of the federal constitution or the self-incrimination clause in art. 1, section 14 of the Indiana Constitution. See *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and compare *Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960). Therefore, these issues are not presented and we focus solely on the alleged *Miranda* violation. Ind.App.Rule 8.3(A)(7); *Department of State Rev-*

*enue v. Fort Wayne National Corp.*, 649 N.E.2d 109 (Ind.1995).

**2.** The exceptions to *Miranda's* exclusionary rule include: *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) (public safety exception), *Illinois v. Perkins*, 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990) (undercover custodial interrogation exception), and *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990) (routine booking question exception).

an objection must be made at trial when the statements are offered into evidence. *See United States v. Udey,* 748 F.2d 1231 (8th Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985) and *United States v. Caldwell,* 954 F.2d 496, 500 (8th Cir.1992), *cert. denied,* 506 U.S. 819, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992).[3]

In the present case, defense counsel moved for the exclusion of the two statements during a motion in limine hearing. However, appellant did not object during trial to the admission of the statements. When the trial court asked appellant's counsel whether he had any objections to admitting the two statements into evidence, he said that he had no objection to the admission of either statement. As this Court has noted in the past, a trial court's denial of a motion to suppress does not preserve error. *See Connell v. State,* 470 N.E.2d 701, 704 (Ind.1984); *Harris v. State,* 480 N.E.2d 932 (Ind.1985). The proper method of preserving error for appellate review is an objection to the admission of the allegedly illegally obtained evidence at the time it is offered into evidence during trial. Since the issue was not properly preserved for review, we will not disturb the trial court's ruling on the admissibility of the statements.

## Motion to Continue the Jury Trial

Appellant claims that the trial court's failure to grant his motion for continuance should result in a reversal of his convictions. At trial, defense counsel claimed that appellant was so terrified of Daniel Howard that he cooperated in the crime only out of fear for his own safety. Thus, claims appellant, his inability to procure Daniel Howard's military records prevented appellant from adequately developing a defense of duress.

We note at the outset that continuances for additional preparation are not favored. Movant must show good cause and the motion will be granted only in the furtherance of justice. *Baxter v. State,* 522 N.E.2d 362, 366 (Ind.1988). The trial court decides whether good cause has been shown, and its ruling will be disturbed only if there is a clear showing of an abuse of discretion. *Id.* To determine whether good cause exists, the trial court may review the circumstances of the case, as well as the allegations of the motion itself. *Id.*

Appellant claimed he feared that Daniel Howard would hurt him if he did not assist in the robbery of Mr. Stemle. Defense counsel argued that this duress would have been substantiated by Howard's military records, which allegedly contain the details of Howard's dishonorable discharge from the United States Army and Howard's "violent propensities." These propensities, claimed appellant, put him in such fear of Howard that he not only participated in the robbery and murder of Stemle, but that he also never reported Howard to the police. The evidence, however, belies his claim. The pillaging of Stemle's home, the fencing of his personal property, and appellant's own kicks to Stemle's head support the jury's finding that appellant was a full participant in the crimes, and not merely Howard's hapless, frightened assistant.

## Reasonableness of the Sentence

Appellant claims that his consecutive sentences for robbery and murder are manifestly unreasonable. At trial, appellant was sentenced to forty years with twenty added for aggravating circumstances for the murder of Stemle and ten years for the robbery of Stemle's house.

This Court will not revise a sentence authorized by statute except where the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind.Appellate Rule 17(B)(1); *Scheckel v. State,* 655 N.E.2d 506 (Ind.1995). A sentence is not manifestly unreasonable unless no reasonable person could find the

---

**3.** In *Udey,* the court held that a claimed *Miranda* violation was not properly preserved because of defense counsel's failure to object. Citing *Udey,* the same court held in *Caldwell* that even assuming a defendant adequately raised a *Miranda* objection in a motion to suppress before a federal magistrate, his failure to renew the objection before the district court did not preserve issue for appeal. Just as in the Indiana courts, a contemporaneous objection rule obtains in the Federal Court System. *See* F.Rule.Crim.P. 52(b).

sentence appropriate to the particular offense and offender for which it was imposed. Ind.App.R. 17(B)(2); *Id.*

Appellant's sentences hardly meet this standard. He was found guilty of murder and robbery on an accomplice liability theory and the degree and quality of his participation in the crime are manifest. It was he who provided the means to enter Stemle's home. He helped plan the robbery, joined in the cruelly inept killing of Stemle, and took money from the victim's wallet. His participation continued well after the crime by disposing of stolen rings, guns, and other physical evidence. Thus, his complicity is manifest and hardly consonant with the defense's portrayal of appellant as the frightened dupe of a renegade super-soldier. Such a cruel and cowardly attack on a seventy-one year old man clearly merits the imposition of the consecutive sixty and ten year terms against appellant.

### Conclusion

Accordingly, the convictions and sentences are affirmed.

SHEPARD, C.J. and DICKSON, SULLIVAN, and SELBY, JJ., concur.