Alexander NORWOOD, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 27A02–9509–CR–530.

Court of Appeals of Indiana.

Aug. 8, 1996.

Jerry T. Drook, Marion, for Appellant–Defendant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

FRIEDLANDER, Judge.

Alexander Norwood appeals his conviction of Possession of Cocaine With Intent to Deliver,[1] presenting the following restated issues for review:

1. Did Norwood receive ineffective assistance of trial counsel?

---

1. Ind.Code Ann. § 35–48–4–1 (West.Supp.1995).

2. Did the trial court err in refusing to read to the jury a final instruction tendered by Norwood concerning a lesser included offense?

We affirm.

The facts favorable to the judgment are that between March 23, 1994 and April 13, 1994, Norwood stayed at the Broadmoor Hotel in Marion, Indiana continuously, except for one or two nights. While at the hotel, Norwood stayed in a room registered either to a female acquaintance or to him under the name of "R.J. Ryder". His, then, most recent check-in date was April 12, when the room was registered to him as "R.J. Ryder". On that day, he paid cash for a one-night stay. On the morning of April 13, sometime prior to checkout time, which Norwood knew to be 11:00 a.m., he fell in the bathtub and injured his shoulder. He called Rozetta Woodcock, the hotel's assistant manager, and asked her to summon an ambulance, which she did.

Nora Alexander was a housekeeper at the hotel. She had been cleaning a room near Norwood's when she saw him being taken away by ambulance. After she finished the nearby room, she entered Norwood's room in order to clean it. Alexander picked up a white sweat shirt that was laying on the floor beside the bed and a "bag of white stuff fell out of it." *Record* at 205. Alexander called the assistant manager to ask whether Norwood would be checking out of the room that day or holding over for another day and also informed her of the discovery of the white substance, which she believed to be cocaine. Alexander was instructed to leave the room immediately. The police were called.

Police responded to the hotel shortly thereafter, but were not allowed to enter Norwood's room until 11:00 a.m. because, as Woodcock later explained,

The room is [Norwood's], technically, until eleven o'clock. And at eleven o'clock we can put a knob lock on the door so that they have to come in and pay us before they get the stuff out of the room. If they want to do that. It's our room after eleven o'clock.

*Record* at 229. Upon entering the room, police discovered a baggie containing what was later determined to be 3.18 grams of cocaine.

1.

■ Norwood claims that he received ineffective assistance of trial counsel because counsel failed to file a motion to suppress the evidence obtained when police searched the hotel and later failed to object to the evidence when it was introduced at trial. Norwood contends that the evidence was inadmissible because it was obtained after a search violative of the Fourth Amendment of the United States Constitution.

■ We note initially that even had counsel submitted a pretrial motion to suppress and had such motion been denied, the ruling would not have served as the final expression of the evidence's admissibility. *Gajdos v. State*, 462 N.E.2d 1017 (Ind.1984). In order to preserve any error in the denial of such a motion, the defendant must object to the evidence when it is offered at trial. *Poulton v. State*, 666 N.E.2d 390 (Ind.1996). Thus, the failure to submit a motion to suppress cannot constitute grounds for reversal in the instant case and we need not address that aspect of Norwood's argument. *Id.* We note also that Norwood avoids waiver of the issue of the evidence's admissibility by presenting the question in the context of ineffective assistance of counsel for failing to offer an objection when it was offered at trial. *See Cardwell v. State*, 666 N.E.2d 420 (Ind.Ct. App.1996).

■ In order to prevail on a claim of ineffective assistance of counsel, Norwood must demonstrate deficient performance that prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Turner v. State*, 580 N.E.2d 665 (Ind. 1991), *reh'g denied*. A finding of ineffective assistance of counsel may not be premised upon the failure to present a claim that would have been meritless. *Vaughn v. State*, 559 N.E.2d 610 (Ind.1990). Therefore, in order to prevail, Norwood must demonstrate that an objection to introduction of the evidence would have been sustained.

The Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, protects persons from unreasonable government intrusions into areas of an individual's life in which he has a reasonable expectation of privacy. *State v. Thomas*, 642 N.E.2d 240 (Ind.Ct.App.1994), *trans. denied*. Pursuant to the Fourth Amendment, all searches of private property must be reasonable. *State v. Foreman*, 662 N.E.2d 929 (Ind.1996). "A warrantless search is presumed to be unreasonable, and the State bears the burden to show that the search falls under an exception to the warrant requirement." *Id.* at 931 (quoting *Smith v. State*, 565 N.E.2d 1059, 1060 (Ind.1991)). The validity of a warrantless search is dependent upon the facts of each case. *Id.*

The first line of inquiry in a Fourth Amendment challenge to the admissibility of evidence is whether the defendant had a personal and legitimate expectation of privacy in the place searched. *Perkins v. State*, 483 N.E.2d 1379 (Ind.1985); *Ceroni v. State*, 559 N.E.2d 372 (Ind.Ct.App.1990), *trans. denied*. Assuming *arguendo* that Norwood had a subjective expectation of privacy, we must determine whether such is one that society would recognize as reasonable. *Foreman, supra*. Hotel guests enjoy the same constitutional protection against unreasonable search and seizure as do occupants of private residences. *Ceroni, supra; see also United States v. Arch*, 7 F.3d 1300 (7th Cir. 1993), *cert. denied*, 510 U.S. 1139, 114 S.Ct. 1123, 127 L.Ed.2d 431 (1994). However, the expectation of privacy ends when the rental period expires and "Fourth Amendment protection of a motel or hotel room ends at the conclusion of the rental period." *Myers v. State*, 454 N.E.2d 861 (Ind.1983).

In the instant case, it is undisputed that Norwood paid for one day's stay on April 12 and that he knew checkout time was 11:00 a.m. the next day. Therefore, Norwood's rental period ended on April 13 at 11:00 a.m. It is also undisputed that police did not enter and search the room until after 11:00 a.m. on April 13. Norwood contends, however, that he "had a legitimate expectation of privacy in his hotel room even after the rental period officially expired at 11:00 A.M. on the morning his room was searched." Appellant's Brief at 9. This contention is premised upon several facts peculiar to this case.

Occasionally, a patron at the Broadmoor Hotel would fail to vacate his room by checkout time and had not paid for another night's stay, but was not present at 11:00 a.m. In such cases, the hotel would place a knob lock on the door that could not be operated by the patron's key. Therefore, when the patron returned, he would be unable to enter the room. At such time, the patron would be forced to contact the front desk. If at that time the patron paid for an extra day's stay, the knob lock could be removed and occupancy could resume. If the patron chose not to pay, presumably he could reenter the room for the sole purpose of retrieving his belongings. On several occasions in the preceding weeks, a knob lock had been placed on the door to Norwood's room, the result of which he had paid for another day, and the knob lock had been removed. Norwood argues,

> [O]n prior occasions when Norwood failed to return by 11:00 A.M. to renew his room rental period, the hotel presumably had no idea where he was or when, or even if, Norwood would return for another night. On those occasions, the hotel put a knob lock on the room until he did return. On those occasions, the hotel did not remove Norwood's property and hold it for him at the office, nor did the hotel clean out the room and rent it to someone else. However, what the hotel did do on those occasions was assume Norwood would return as he had before, and also acted as if the room was still his, even after the rental period expired. Due to this prior conduct of the hotel management, Norwood was led to believe his room would be safely held for him, with a lock on the door, until he returned, even if it was after 11 A.M.

Appellant's Brief at 10.

Norwood offers no authority for the proposition that a hotel patron's expectation of privacy continues after the expiration of the rental period if the hotel previously allowed the renter to extend the rental period after it had lapsed, nor does our research reveal any. Although we cannot say that the proposition

could never be true, we conclude that it is without merit on the facts of this case.

It is undisputed that hotel procedure included locking a patron out of a room after the rental period expired. This was true even if the patron had left property in the room. While the patron could extend the rental period and reassume occupancy of the room by paying an additional fee, this does not alter the fact that between the expiration of the rental period and payment of the additional fee, the patron was rightfully denied access to the room by the hotel, indicating that the hotel had rightfully reassumed complete control over the room and that the renter's occupancy had terminated.

With respect to the hotel's conduct on previous similar occasions, we disagree with Norwood's assertion regarding the hotel's motivation. Although Norwood's property had been left in his room on prior occasions and he was given the opportunity to renew his occupancy, this does not necessarily reflect a view on the hotel's part that "the room was still his". To the contrary, placing a knob lock on the door unequivocally reflected the hotel's view that the room had reverted to its exclusive control. The fact that Norwood's property remained in the room does not alter the fact that the hotel had rightfully reassumed exclusive control of the room. We therefore discern no compelling reason to create an exception in the instant case to the rule that "Fourth Amendment protection of a motel or hotel room ends at the conclusion of the rental period." *Myers, supra,* 454 N.E.2d at 864. We conclude that society would not recognize Norwood's expectation of privacy as reasonable after the rental period had lapsed and he no longer had a legal right to occupy or even enter the room.

■ A valid consent to a search obviates the need for a warrant. *Foreman, supra.* After 11:00 a.m., the hotel was in sole possession and control of the room. *Myers, supra.* Because the hotel consented to the search, there was no Fourth Amendment violation and an objection to admission of the evidence upon that basis would have been denied by the trial court. Therefore, the failure to object to the evidence was not ineffective assistance of counsel. *Poulton, supra.*

**2.**

■ Norwood contends that the trial court erred in refusing to give Norwood's proposed final instruction on the lesser included offense of possession with intent to deliver of an amount less than three grams.

■ Norwood's appellate brief does not contain a verbatim of a tendered instruction concerning the lesser included offense in question. Rule 8.3(A)(7) of the Indiana Rules of Appellate Procedure requires that when error is predicated upon refusal to give a tendered instruction, "the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto." Failure to comply with the requirements of Rule 8.3(A)(7) results in waiver of the issue. *Riley v. State,* 506 N.E.2d 476 (Ind.1987); *Lahr v. State,* 640 N.E.2d 756 (Ind.Ct.App.1994), *trans. denied.* Even were it not waived, however, the argument is without merit.

■ When called upon by a defendant to instruct a jury on an alleged lesser included offense, the court must first compare the statutes defining the crime charged and the alleged lesser included offense to determine whether the lesser offense is inherently included in the crime charged. *See Wright v. State,* 658 N.E.2d 563 (Ind.1995). In the instant case, the offense of possession with intent in an amount less than three grams is a lesser included offense of possession with intent in an amount over three grams. *See Chandler v. State,* 581 N.E.2d 1233 (Ind. 1991).

■ If, as here, the alleged lesser included offense is inherently or factually included in the greater offense, the trial court must examine the evidence presented by both parties.

If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the in-

herently or factually included lesser offense.

*Wright, supra,* 658 N.E.2d at 567. In the instant case, the only difference between the charged offense and lesser offense is the amount of cocaine. Thus, we must examine the evidence to determine whether there was a serious evidentiary dispute about the amount of cocaine.

Jerry Hetrick was a forensic drug chemist for the Indiana State Police. Hetrick performed the analysis of the substance found in Norwood's room. Hetrick testified that the substance weighed 3.18 grams and responded in the negative when asked whether there was "any possibility, that at the time of [his] examination that substance could've weighed less than three grams?" *Record* at 518. However, Norwood contends that the evidence revealed that the substance contained moisture at the time it was analyzed by Hetrick and that the substance was drier and harder at the time of trial than it had been at the time of the analysis. The implication is that the evidence permits a reasonable inference that the substance weighed more than three grams because of the moisture and that the cocaine itself may have been less than three grams.

We note that the statute in question proscribes the sale of cocaine, whether pure or adulterated. Our supreme court has determined that with respect to the weight element of offenses prosecuted under IC §§ 35–48–4–1, the total weight of the drug, and not merely its pure component, is to be considered. *Tobias v. State,* 479 N.E.2d 508 (Ind. 1985), *reh'g denied; see also Evans v. State,* 566 N.E.2d 1037 (Ind.Ct.App.1991). To the extent that water contributed to the weight,[2] it was an adulterating substance and thus properly considered in the total weight of the substance. *Id.* Therefore, there was no serious evidentiary dispute regarding the weight of the substance and the trial court did not

err in refusing to instruct the jury on the lesser included offense. *Wright, supra.*

Judgment affirmed.

BAKER, J. concurs.

KIRSCH, J. concurs with separate opinion.

KIRSCH, Judge, concurring.

I concur in the result reached by the majority. I write separately to express my concern, however, with the conclusion reached by the majority that Norwood had no reasonable expectation of privacy.

As the majority notes, the "validity of a warrantless search is dependent upon the facts of each case." *Opinion* at 35. Here, the facts of this case reveal that on prior occasions Norwood had stayed over beyond checkout time. On each of such occasions, a knob lock was placed on his door until he paid for the extended time. This procedure was the standard operating procedure for the hotel. Prior to the checkout time on the day of the search, Norwood fell and needed emergency medical attention. Hotel personnel summoned an ambulance, and Norwood was taken to the hospital. There is no evidence that Norwood removed his personal belongings from the hotel room or took any other action indicating an intent to abandon the hotel premises. Moreover, the hotel employee who found what was later determined to be cocaine did so prior to the checkout time, a time during which it is undisputed that Norwood had a right to privacy in the hotel room. On the basis of these facts, I believe a factual issue was presented as to whether Norwood had a reasonable expectation of privacy in the hotel room at the time the search was conducted.

"A warrantless search is presumed to be unreasonable and the State bears the burden to show that the search falls under an exception to the warrant requirement." *Opinion* at 35 (quoting *Smith v. State,* 565 N.E.2d 1059, 1060 (Ind.1991)). Here, the *only* evidence to support Norwood's conviction was

---

**2.** Hetrick testified that crack cocaine is manufactured by mixing cocaine powder with a small quantity of water. The mixture requires from one-half hour to three hours to dry and harden. Hetrick did not test the cocaine found in Nor-

wood's room until April 14, the day after it was seized. Accordingly, the substance would have dried and any weight that may have been attributable to the presence of water would have been insignificant.

that seized in the warrantless search. Moreover, the admission of such evidence established Norwood's guilt. By failing to challenge the warrantless search, Norwood's counsel freed the State of its burden and failed to preserve any error on appeal. This question should have been presented to the trial court for its resolution, and counsel's failure to do so constituted deficient performance.

Norwood must show more than deficient performance; he must also show prejudice resulting from such deficiency. Because Norwood has not demonstrated that an objection to the introduction of the evidence would have been sustained, he has failed to show such prejudice. Accordingly, I concur in the result reached by the majority.