## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 23 2020, 10:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Chris M. Teagle | Curtis T. Hill, Jr. |
| Muncie, Indiana | Attorney General of Indiana |
| | Sierra A. Murray |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy W.C. Thompson, | June 23, 2020 |
| *Appellant-Defendant,* | Court of Appeals Case No. 19A-CR-2933 |
| v. | Appeal from the Jay Circuit Court |
| | The Honorable Brian D. Hutchison, Judge |
| State of Indiana, | Trial Court Cause No. 38C01-1812-F2-23 |
| *Appellee-Plaintiff* | |

**Baker, Judge.**

[1]     Timothy Thompson appeals his convictions for Level 2 Felony Dealing in Methamphetamine,[1] Level 6 Felony Unlawful Possession of a Syringe,[2] Level 6 Felony Maintaining a Common Nuisance,[3] and Class B Misdemeanor Possession of Marijuana.[4]  Thompson argues that the trial court erroneously admitted evidence stemming from a search of his residence and that the evidence is insufficient to support his convictions for dealing in methamphetamine and possession of marijuana.  Finding no error and sufficient evidence, we affirm.

# Facts

[2]     In October 2018, Thompson was released from incarceration to parole.  As part of his parole agreement, Thompson agreed that his "person and residence or property under [his] control may be subject to reasonable search by [his] supervising officer or authorized official of the Department of Correction if the officer or official has reasonable cause to believe that the parolee is violating or is in imminent danger of violating a condition to remaining on parole."  Tr. Supp. Hrg. Ex. 1.

---

[1] Ind. Code § 35-48-4-1.1(a)(2), -1.1(e)(1).

[2] Ind. Code § 16-42-19-18(a).

[3] Ind. Code § 35-45-1-5(c).

[4] I.C. § 35-48-4-11(a)(1).

[3]     In December 2018, Thompson tested positive on a drug screen, which was a violation of the conditions of his parole. On December 13, 2018, Thompson's parole officer and a deputy went to Thompson's residence to serve an arrest warrant based on the positive screen. Once inside the residence, the parole officer and deputy observed several items in plain view indicating that Thompson was violating his parole, including a brillo pad, spoon with a white residue, a glass pipe, corner cut baggies, and loose green leafy material. Once Thompson was in custody, the parole officer removed Thompson's wallet from his pants. The wallet contained a syringe and $370. The parole officer also found a capsule containing a brown substance in Thompson's pants pocket.

[4]     Upon seeing the items in plain view and obtaining the items on Thompson's person, the parole officer decided to search the residence further. In the living room, there was a chest, which held a scale, tin foils, baggies, a brillo pad, a methamphetamine smoking pipe, four bags containing a substance later determined to be methamphetamine, and one bag containing a substance later determined to be marijuana. The bags of methamphetamine were later determined to hold the following amounts, respectively: 8.12 grams of methamphetamine and dimethylsulfone; 9.60 grams of methamphetamine; 2.52 grams of methamphetamine and dimethylsulfone; and 1.13 grams of methamphetamine. The total amount of adulterated and pure methamphetamine was 21.37 grams.

[5]     On December 14, 2018, the State charged Thompson with Level 2 felony dealing in methamphetamine, Level 6 felony unlawful possession of a syringe,

Level 6 felony maintaining a common nuisance, and Class B misdemeanor possession of marijuana. Thompson moved to suppress the evidence discovered when the parole officer searched his residence after he was placed in custody; the trial court denied the motion.

[6] Thompson's jury trial took place on October 28, 2019. The jury found him guilty as charged. The trial court later sentenced Thompson to an aggregate term of twenty years imprisonment. Thompson now appeals.

# Discussion and Decision

## I. Admission of Evidence

[7] Thompson first argues that the trial court erroneously admitted the evidence found by his parole officer in the search of his residence after he was taken into custody. Trial courts have broad discretion to admit evidence and we will reverse only when the admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). In reviewing the trial court's decision, we will consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. *Reaves v. State*, 586 N.E.2d 847, 857 (Ind. 1992).

[8] At the time of the search, Thompson was on parole and had signed a parole agreement. As such, the proper question in this case is whether the search conformed to the parameters of the parole agreement. *See Samson v. California*, 547 U.S. 843, 857 (2006) (holding that the Fourth Amendment does not

prohibit a police officer from conducting a suspicionless search of a parolee when the parolee had agreed in writing to be subject to search by an officer with or without a search warrant and with or without cause); *State v. Vanderkolk*, 32 N.E.3d 775, 779 (Ind. 2015) (holding that "Indiana probationers and community corrections participants, who have consented or been clearly informed that the conditions of their probation or community corrections program unambiguously authorize warrantless and suspicionless searches, may thereafter be subject to such searches during the period of their probationary or community corrections status").

[9] One of the parole conditions to which Thompson agreed was that his "person and residence or property under [his] control may be subject to *reasonable search* by [his] supervising officer or authorized official of the Department of Correction if the officer or official has reasonable cause to believe that the parolee is violating or is in imminent danger of violating a condition to remaining on parole." Tr. Supp. Hrg. Ex. 1 (emphasis added). Thompson's parole officer plainly had reasonable cause to believe that Thompson had violated parole based both on the positive drug screen and on the items in plain view in Thompson's residence. What we must determine, therefore, is whether the search of Thompson's residence was reasonable.

[10] The parole officer knew that Thompson had provided a positive drug screen. Upon entering Thompson's residence, the parole officer and deputy observed in plain view a brillo pad, spoon with a white residue, a glass pipe, corner cut baggies, and loose green leafy material. After placing Thompson in custody

and searching his person, the officers obtained his wallet, which held $370 and a syringe, and found a capsule with a brown substance in his pocket. All these facts together led the officers to determine that a further search of the residence was warranted. The search itself was limited in scope to Thompson's living room area, which was a room in close proximity to the drug-related items in plain view, and there is no evidence that the search occurred at an unreasonable time or lasted for an unreasonable amount of time.

[11] Given the contraband in plain view and on Thompson's person and the limited nature of the search, we find that the search of Thompson's residence after he was in custody was reasonable. Consequently, the search conformed to the parameters of the parole agreement and the trial court did not err by admitting the evidence.

## II. Sufficiency

[12] Next, Thompson argues that the evidence is insufficient to support his convictions for dealing in methamphetamine and possession of marijuana. When reviewing the sufficiency of the evidence supporting a conviction, we will affirm if the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We will neither reweigh the evidence nor assess witness credibility. *Id.*

# A. Dealing in Methamphetamine

[13] To convict Thompson of Level 2 felony dealing in methamphetamine, the State was required to prove beyond a reasonable doubt that he knowingly possessed at least ten grams of pure or adulterated methamphetamine with the intent to deliver or finance the delivery of the methamphetamine. I.C. § 35-48-4-1.1(a)(2), -1.1(e)(1). The only element that Thompson challenges is whether the State proved beyond a reasonable doubt that the amount of methamphetamine he possessed totaled at least ten grams.

[14] The officers found four packages of methamphetamine in Thompson's residence. The two packages of methamphetamine adulterated[5] with dimethylsulfone totaled 10.64 grams; the two packages of pure methamphetamine totaled 10.73 grams. Thompson argues that the two packages of adulterated methamphetamine do not qualify as pure methamphetamine because of the presence of the other substance. He is incorrect, inasmuch as the statute explicitly covers both adulterated and pure methamphetamine. I.C. § 35-48-4-1.1(a); *see also Buelna*, 20 N.E.3d at 143 (observing that when methamphetamine is adulterated, the "'total weight . . . and not [the drug's] pure component' should be considered") (quoting *Tobias v. State*, 479 N.E.2d 508, 511 (Ind. 1985)). But even if he were correct, the two

---

[5] Adulterated methamphetamine is defined as "methamphetamine in its final, extracted form that contains lingering impurities or has been diluted or cut with a foreign substance." *Buelna v. State*, 20 N.E.3d 137, 146 (Ind. 2014).

packages containing pure methamphetamine totaled over ten grams. Therefore, the evidence is sufficient to support this conviction.

## B. Possession of Marijuana

To convict Thompson of Class B misdemeanor possession of marijuana, the State was required to prove beyond a reasonable doubt that Thompson knowingly possessed pure or adulterated marijuana. I.C. § 35-48-4-11(a)(1).

The officers who searched Thompson's home found a green leafy substance. At trial, the forensic scientist who tested the substance testified that the substance "was found to contain marijuana." Tr. Vol. II p. 94. The report, which was admitted into evidence, also stated that the substance was "found to contain Marijuana." Tr. Ex. 13. Additionally, the officer who was present during the arrest and search testified that the "[g]reen leafy, plant like substance" had the characteristics of marijuana and tested positive for marijuana. Tr. Vol. II p. 74. A reasonable factfinder could conclude from this evidence that Thompson knowingly possessed marijuana.[6] Therefore, the evidence is sufficient.

---

[6] Thompson highlights a portion of the report that states that "*[i]f* the percent concentration of [THC] in the plant material needs to be determined," the item must be resubmitted "for quantitative analysis." Tr. Ex. 13 (emphasis added). This does not mean that additional testing is required here because the percent concentration of THC did not need to be determined. The report definitively states that the substance was marijuana, which suffices to support the conviction.

The judgment of the trial court is affirmed.

Bradford, C.J., and Pyle, J., concur.