**Michael D. BAILEY, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 47S00–0103–CR–167.

Supreme Court of Indiana.

March 12, 2002.

John M. Plummer, III, Bedford, IN, for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, for Appellee.

SHEPARD, Chief Justice.

A jury found Michael D. Bailey guilty of murder and aggravated battery. He appeals, arguing that the trial court erred in admitting several statements made at the scene of the crime and in sentencing him to consecutive, maximum sentences.

## Facts & Procedural History

On the evening of July 20, 1998, Robin Hudson was working in her home while her roommate Carla Godsey mowed the lawn. At about 8 p.m., Bailey arrived armed with a shotgun. Bailey had formerly been her live-in boyfriend; he said he wanted to retrieve some of his property.

Ignoring Hudson's requests that he wait outside, Bailey entered the home and struck Hudson in the mouth with his fist, knocking her to the floor face-down. Bailey then sat on Hudson's back, told her to shut up, and tried to bind her hands. Unable to do so, Bailey continued beating her with his fists, a stick, and a telephone receiver. At one point he attempted to pull a fish aquarium down on top of her. Bailey finally stopped the beating and apologized to Hudson.

After the attack, Bailey told Hudson to clean up, then picked up the shotgun and went outside. He returned a few minutes later and told Hudson, "I killed Carla." (R. at 1120.) Hudson looked outside and saw Godsey lying on the ground beside the lawnmower. Bailey then directed Hudson to take a shower and get cleaned up so she could help him hide Godsey's body. Bailey went back outside, at which point Hudson called 911.

Hudson told the 911 dispatcher that she had been beaten and someone had been killed, then hung up when Bailey came back inside. When Bailey was out of sight, Hudson again called 911. A short time after her second call, the police arrived. Hudson ran out the front door towards the officers.

Officers Lonnie Johnson, Brian Allender, and Mike Terry had been dispatched to investigate a female requesting assistance and a possible murder. Upon arriving on the scene, they saw Hudson running out of the house covered with blood. The

officers then ordered Bailey out of the house. Bailey came out, and Officer Allender handcuffed him.

Based on the report of another possible victim, Officer Allender asked Bailey if anyone else was in the house and the whereabouts of the other victim. Bailey replied, "She's over by the lawnmower." (R. at 1234.) Allender found Godsey's body on the ground near the lawnmower. He then read Bailey his *Miranda* rights and placed him in a patrol car.

Shortly thereafter, Detective Phillip Wigley arrived on the scene and introduced himself to Bailey. Prior to any questioning, Bailey said, "I think my hand's broke." (R. at 1512.) Wigley asked Bailey, "How did your hand get broke?", and Bailey replied, "I hit somethin'. I don't know what." (*Id.*) Wigley then asked to see Bailey's hand and Bailey said, "Well, I don't know what happened." (*Id.*) After this exchange, Wigley again informed Bailey of his *Miranda* rights. Bailey said that he understood these rights and signed a written waiver.

Wigley began questioning Bailey. At one point, Bailey stated, "I may need a what do you call it … a appointed … oh appointed attorney." (R. at 1528.) Wigley explained that all Bailey had to say was, "I want an attorney," and the questioning would cease, to which Bailey replied, "[O]kay." (*Id.*) Wigley then asked Bailey if he wanted an attorney or if he wanted to talk. Bailey responded, "I can talk to you, but I don't know." (*Id.*) Wigley again explained the situation and Bailey replied, "[O]kay." (R. at 1528–29.) Wigley resumed questioning. Bailey signed a written statement after the conclusion of his videotaped conversation with Wigley.

The State charged Bailey with murder,[1] aggravated battery,[2] and two counts of battery.[3] Prior to trial, Bailey moved to suppress his statement "She's over by the lawnmower" and all statements to Detective Wigley. The trial court denied the motions and allowed this testimony over Bailey's timely objections.

A jury found Bailey guilty of all counts. The trial court vacated the battery convictions and sentenced Bailey to consecutive terms of sixty-five years for murder and twenty years for aggravated battery.

## I. Statements Made Prior to Signed Waiver

■ Bailey first argues that his statement, "She's over by the lawnmower," should have been suppressed because it was a result of a custodial interrogation prior to the administration of *Miranda* warnings. (Appellant's Br. at 12.) The State responds that the questioning falls within the "public-safety" exception to *Miranda*. (Appellee's Br. at 8.)

■ Statements that are the product of custodial interrogation prior to the advisement of the Fifth Amendment guarantee against self-incrimination are generally inadmissible. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Poulton v. State*, 666 N.E.2d 390, 392 (Ind.1996). Nevertheless, in *Price v. State*, 591 N.E.2d 1027, 1030 (Ind.1992), this Court recognized that a public-safety exception to the *Miranda* rule exists when officers "have an immediate concern for the safety of the general public in that an armed weapon remained undiscovered."

Our ruling in *Price* was similar to the U.S. Supreme Court's decision in *New York v. Quarles*, 467 U.S. 649, 104 S.Ct.

---

1. Ind.Code Ann. § 35–42–1–1(1) (West 1998).

2. Ind.Code Ann. § 35–42–2–1.5 (West 1998).

3. Ind.Code Ann. § 35–42–2–1(3) (West 1998).

2626, 81 L.Ed.2d 550 (1984), in which a suspect in an armed rape was found wearing an empty shoulder holster. *Id.* at 651–52, 104 S.Ct. 2626. Police asked the suspect where the weapon was before providing *Miranda* warnings. *Id.* at 652, 104 S.Ct. 2626. The Court held that overriding concerns for the public safety justified the failure to first advise the suspect of his *Miranda* rights. *Id.* at 657–58, 104 S.Ct. 2626.

Though Officer Allender's concern was not for the general public's safety, as it was in *Price* and *Quarles,* it was for the safety of another possible victim. There is a fair amount of authority holding that questioning for the limited purposes of locating or aiding a possible victim falls within the "public safety exception" to *Miranda. See United States v. Padilla,* 819 F.2d 952 (10th Cir.1987) (shooting suspect's response to pre-*Miranda* questions about the possibility of other victims held admissible); *Smith v. State,* 646 So.2d 704 (Ala.Crim.App.1994) (suspect's response when officer asked whether suspect had been shot held admissible); *State v. Ramirez,* 178 Ariz. 116, 871 P.2d 237 (1994), *cert. denied,* 513 U.S. 968, 115 S.Ct. 435, 130 L.Ed.2d 347 (1994) (suspect's response to officer's pre-*Miranda* questions as to the condition of others at the scene held admissible); *State v. White,* 619 A.2d 92 (Me.1993) (suspect's response to officer's pre-*Miranda* questions about the location of a victim held admissible); *State v. Orso,* 789 S.W.2d 177 (Mo.Ct.App.1990), *cert. denied,* 499 U.S. 951, 111 S.Ct. 1423, 113 L.Ed.2d 475 (1991) (suspect's response to pre-*Miranda* question as to the location of a potential victim held admissible).

Here, based upon the dispatch, the officers believed two victims were involved in the incident. Arriving at the scene, they saw only one victim, Hudson. Even after Bailey was apprehended, the second victim's location and condition were unknown.

Officer Allender testified that he questioned Bailey out of concern for the other victim's safety. The longer it took the officers to locate Godsey, the longer she would go without potentially life-saving medical attention. Attending to Godsey's safety was more urgent than informing Bailey of his *Miranda* rights. *See Quarles,* 467 U.S. at 657, 104 S.Ct. 2626 ("[H]ad *Miranda* warnings deterred [defendant] from responding to [the officer's] question about the whereabouts of the gun, the cost would have been something more than merely the failure to obtain evidence useful in convicting [defendant].").

■ Moreover, Officer Allender's questioning of Bailey, though clearly custodial, was not the type of "interrogation" that *Miranda* contemplates. "An interrogation occurs only when officers intend to elicit, by whatever means, substantive evidence concerning criminal activity." *Nading v. State,* 268 Ind. 634, 377 N.E.2d 1345, 1348 (1978). Here, Allender limited his initial questions to the location of the potential victim and immediately advised Bailey of his rights once the location was ascertained.

The trial court did not err in admitting Bailey's statement, "She's over by the lawnmower."

■ Bailey next contends that his statements regarding his injured hand should not have been admitted into evidence because these statements were made before the administration of *Miranda* warnings. (Appellant's Br. at 23.) The record does not support Bailey's contention. Officer Allender informed Bailey of his *Miranda* rights after discovering Godsey's body, (R. at 1236–37), and Detective Wigley was aware that Bailey had been advised of his rights, (R. at 929, 933).

## II. Statements Made After Signed Waiver

██ Bailey next argues that the State failed to prove both that he waived his rights knowingly and voluntarily, and that his statements were voluntary. (Appellant's Br. at 26–27.) Bailey claims he was unable to consent to the waiver and that his statements were involuntary because he ingested prescription medications and had some degree of mental illness. (*Id.*)

██ The U.S. Supreme Court has held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). A defendant's statements are not voluntary when induced by violence, threats, promises or other improper influences. *Crain v. State,* 736 N.E.2d 1223, 1231 (Ind.2000).

Both Officer Allender and Detective Wigley advised Bailey of his rights, and Bailey signed a written waiver. There is no evidence that Wigley coerced, threatened, promised, or in any other way improperly influenced Bailey. The trial court did not err in admitting the statements into evidence.

## III. Sixth Amendment Right to Counsel

██ Bailey also contends that his Sixth Amendment right to counsel was violated when Detective Wigley continued questioning after Bailey said, "I may need a what do you call it ... a appointed ... oh appointed attorney." (Appellant's Br. at 25; R. at 1528.)

██ To invoke the right to counsel, "It is not enough that the defendant *might* be invoking his rights; the request must be unambiguous." *Taylor v. State,* 689 N.E.2d 699, 703 (Ind.1997) (emphasis add-

ed). An officer need not cease questioning when an accused makes an equivocal statement requesting counsel, nor is she required to ask clarifying questions to determine whether the accused wants counsel. *Id.; see also Jolley v. State,* 684 N.E.2d 491, 492 (Ind.1997) (citing *Davis v. United States,* 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994)).

Bailey's statement was equivocal. *See Taylor,* 689 N.E.2d at 703 (defendant did not invoke right to counsel when he said, "I guess I really want a lawyer, but, I mean, I've never done this before so I don't know.").

The transcript of Bailey's interview indicates that some of Bailey's words after the statement about counsel were indiscernible. (R. at 1528.) However, although he was under no duty to do so, Detective Wigley responded to the statement by explaining how Bailey could invoke his right to counsel. Wigley told Bailey that all he needed to say was, "I want an attorney," and questioning would cease. (R. at 1528.) Bailey said he understood this right, yet never unequivocally requested counsel. Accordingly, the trial court did not err in admitting Bailey's statements to Detective Wigley.

## IV. Sixty Five Years, Plus Twenty

██ Bailey challenges his sentence, saying the trial court improperly considered aggravating and mitigating circumstances, and that the sentence was manifestly unreasonable. (Appellant's Br. at 33–40.)

*A. Aggravating and Mitigating Factors.* The trial court found three aggravating circumstances: (1) Bailey's prior criminal activity; (2) his need for correctional or rehabilitative treatment best provided by a penal facility beyond the presumptive sentence; and (3) the nature and circumstances of the crime. The sole mitigating

factor was Bailey's long-term emotional and psychological problems.

Sentencing lies within the discretion of the trial court. *Charlton v. State*, 702 N.E.2d 1045 (Ind.1998). "When enhancing a sentence, a trial court must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reasons why each circumstance is aggravating or mitigating; and (3) evaluate and balance the mitigating against the aggravating circumstances to determine if the mitigating offset the aggravating circumstances." *Id.* at 1052 (citations omitted).

The State produced evidence that Bailey had a history of marijuana use, and the trial court was entitled to find this an aggravating circumstance under Ind.Code Ann. § 35–38–1–7.1(b)(2) (West 1998). A court may consider evidence that a defendant committed crimes at an earlier date as support for a finding that the defendant has a history of criminal activity, even if those acts were not reduced to judgment. *Griffin v. State*, 273 Ind. 184, 402 N.E.2d 981, 983 (1980).

The trial court next found Bailey's need for correctional and rehabilitative treatment at a penal facility for longer than the presumptive sentence to be an aggravator. Ind.Code Ann. § 35–38–1–7.1(b)(3) (West 1998). To support such a finding, a court needs to explain why the defendant requires treatment beyond the presumptive sentence. *Walter v. State*, 727 N.E.2d 443, 447 (Ind.2000) (citations omitted). Considering the mental and psychological history of Bailey, the trial court determined that his problems had not been "cured," and that the presump-

tive sentence would not suffice. (R. at 2736.) It concluded that the events in Bailey's life leading up to the crime were "fairly common" and would continue throughout his life. (R. at 2733–34.) These observations articulated adequate grounds to support this aggravator.

The trial court also appropriately considered the nature of the crime as an aggravating circumstance. *Rascoe v. State*, 736 N.E.2d 246 (Ind.2000). Bailey brutally and repeatedly struck Hudson with his fists, a stick, and even a phone. He attempted to bind her hands and drop an aquarium on her. "Infliction of grave injury and pain over an extended period of time is sufficient to support an aggravating factor." *Penick v. State*, 659 N.E.2d 484, 488 (Ind.1995) (citation omitted).

Moreover, Bailey victimized two people. *See Pyle v. State*, 493 N.E.2d 452, 453 (Ind.1986) (two victims found to be an aggravating circumstance). In addition to beating Hudson, Bailey shot Godsey twice at close range with a shotgun and then wrapped an extension cord around her neck in an apparent attempt to drag and conceal her body. The brutality, length, and scope of the attack warranted finding the nature of the crime an aggravating circumstance.

We now turn to mitigating factors. While Bailey points to several factors that could have affected his mental state at the moment of the offense,[4] the trial court has discretion in evaluating mitigating factors and must only include those it deems significant. *Battles v. State*, 688 N.E.2d 1230 (Ind.1997). The trial court acted within its power in finding only the long-term emo-

---

4. Bailey points to his non-violent character, his lack of a criminal record, his year-long battle with depression, his deteriorating mental health, the recent death of his aunt, the breakup with Hudson, a panic attack, a car accident, and his thoughts that Hudson and Godsey were having an affair. (Appellant's Br. at 38–39.)

tional and mental problems a significant mitigating factor.

**B.   Manifestly   Unreasonable.** Bailey also argues that his eighty-five year sentence is manifestly unreasonable. (Appellant's Br. at 33.)   This Court has the constitutional authority to review and revise sentences when the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender."   *Noojin v. State,* 730 N.E.2d 672, 679 (Ind.2000) (quoting Ind. Appellate Rule 17(B)).[5]

In light of the brutal nature of Bailey's attacks on Hudson and Godsey, we cannot say that an eighty-five year sentence was manifestly unreasonable.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.