## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 31 2018, 10:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joshuah Rainbolt, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | December 31, 2018 <br><br> Court of Appeals Case No. 18A-CR-1403 <br><br> Appeal from the Washington Circuit Court <br><br> The Honorable Larry W. Medlock, Judge <br><br> Trial Court Cause No. 88C01-1701-MR-35 |

**Baker, Judge.**

[1] Joshuah Rainbolt appeals the sentence imposed by the trial court after he pleaded guilty to one count of Murder, arguing that the trial court erred when it refused to consider his age to be a mitigating factor and that his sentence was inappropriate in light of the nature of the offense and his character. Finding no error and that the sentence was not inappropriate, we affirm.

# Facts

[2] Twenty-year-old Rainbolt experienced a difficult childhood: his parents never married, his father died of a heart attack when Rainbolt was thirteen years old, he moved from guardian to guardian for the remainder of his teenage years, he was diagnosed with a learning disability requiring an Individualized Education Program (IEP) at school, he repeatedly skipped school, and he frequently drank alcohol and smoked both marijuana and spice. Due to his substance abuse issues and repeated truancy, Rainbolt was expelled from high school; nevertheless, Rainbolt eventually went back to school and graduated.

[3] Rainbolt lived with Blake Box-Skinner at Rainbolt's father's old residence in Washington County. The two had known each other since junior high school and considered themselves to be best friends. Both worked temporary, part-time jobs, played video games, and often smoked marijuana together. However, at the time of the incident, Rainbolt was "voluntarily unemployed" and "working enough odd jobs to keep the heat on." Appellant's App. Vol. III p. 197.

[4]     During either the late night or early morning hours of January 10, 2017, Rainbolt and Box-Skinner left their home and walked to a field close by with a 12-gauge shotgun in tow. At some point, Rainbolt shot Box-Skinner in the back of the head at close range, with the barrel "almost in[] contact" with Box-Skinner's head. Tr. Vol. II p. 60-62. Box-Skinner died almost instantly. After checking the body to confirm that Box-Skinner had died, Rainbolt dragged the corpse into a shed located on the property. Rainbolt placed a washing machine on top of Box-Skinner's head and torso to conceal the body and wedged something at the bottom of the shed's door to keep the door locked. Rainbolt then drove to a bridge over the White River and disposed of the shotgun.

[5]     Over the course of the next few days, Box-Skinner's parents and uncle repeatedly called and texted Box-Skinner, worrying about where he was. Rainbolt used Box-Skinner's phone to text and call Box-Skinner's family to assure them that everything was fine. On January 12, 2017, Box-Skinner's family went to Rainbolt's house and property when he was not at home and discovered Box-Skinner's body in the shed under the washing machine.

[6]     The police took Rainbolt into custody and interrogated him. During the four-hour interrogation, Rainbolt provided "several different stories" and "multiple versions" about what happened between him and Box-Skinner. *Id*. at 45-46. For example, Rainbolt lied about how far apart they were when he shot the gun and whether the shooting was a hunting accident or motive-driven. St. Ex. 14. Eventually, Rainbolt broke down and confessed to shooting Box-Skinner,

putting his corpse in the shed, and disposing of the firearm. A dive team attempted to locate the firearm, but it was unable to do so.

[7] On January 13, 2017, the State charged Rainbolt with one count of murder and one count of Level 6 felony obstruction of justice. On April 4, 2018, the State amended its charges to add a firearm sentencing enhancement. A psychologist who evaluated Rainbolt concluded that he has some developmental arrest and psychological immaturity, primarily as a result of his difficult childhood.

[8] On April 11, 2018, Rainbolt entered into an open guilty plea agreement, pursuant to which he agreed to plead guilty to the murder count in exchange for dismissal of the other charges. At the sentencing hearing on May 22, 2018, the trial court determined that the aggravating factors—(1) the excessive harm, injury, and damage suffered by the victim and his family; (2) Rainbolt's efforts to conceal the murder; (3) the brutal, heinous nature of the criminal act; and (4) Rainbolt's history of substance abuse—outweighed the mitigating factors—(1) Rainbolt's lack of a prior criminal history; (2) Rainbolt's willingness to plead guilty and accept responsibility for his deed; and (3) Rainbolt's attempted show of remorse for what he had done. The trial court refused to consider Rainbolt's age to be a mitigating factor in its sentencing evaluation.

[9] Thereafter, the trial court sentenced Rainbolt to sixty years in the Department of Correction (DOC) with five years suspended to probation. Rainbolt now appeals.

# Discussion and Decision

Rainbolt makes two arguments on appeal: (1) the trial court erroneously refused to consider his age to be a mitigating factor in its sentencing decision; and (2) the sentence imposed was inappropriate in light of the nature of the offense and his character.

# I. Mitigating Factor

Rainbolt first argues that the trial court erroneously refused to consider his age to be a mitigating factor in its sentencing decision.

We will reverse a sentencing decision involving the use or non-use of certain mitigating factors only if the decision is clearly against the logic and effect of the facts and circumstances before the trial court and all reasonable inferences drawn therefrom. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007). We note that sentencing decisions are left to the sound discretion of the trial court. *Smallwood v. State*, 773 N.E.2d 259, 263 (Ind. 2002).

Specifically, with regards to mitigating factors, the trial court is under no obligation to find and/or use mitigating factors in its sentencing analysis. *Wingett v. State*, 640 N.E.2d 372, 373 (Ind. 1994). In fact, the burden is on the defendant to establish that a proffered mitigating factor is both significant and "clearly supported by the record," *Anglemyer*, 868 N.E.2d at 493, if he alleges that the trial court failed to identify a mitigating circumstance.

[14] Generally, a defendant's age is not a significant mitigator. *See, e.g., Gross v. State*, 769 N.E.2d 1136, 1141 (Ind. 2002); (holding that age does not automatically qualify as a mitigator, despite youth); *Spears v. State*, 735 N.E.2d 1161, 1167 (Ind. 2000) (holding that eighteen-year-old defendant's age would not be recognized as mitigating factor given the severity of the crime); *Bryant v. State*, 802 N.E.2d 486, 502 (Ind. Ct. App. 2004) (holding that age is not a mitigator when someone is just about to turn eighteen years old).

[15] Here, the trial court acknowledged Rainbolt's youth but pointed out that "lots of people your age are making better choices, living a different lifestyle, achieving and benefitting themselves, their families and society." Tr. Vol. II p. 188-90. Despite any diagnoses of immaturity, Rainbolt had all the requisite mental faculties of an average adult. Consequently, his argument to use his age as a mitigator for the crime he committed is unpersuasive.

[16] Furthermore, Rainbolt is not as young or naïve as he makes himself out to be. Rainbolt had already attained a suitable residence outside of the childhood home, worked for a number of years, paid taxes and other bills, lived with individuals his age, experienced death and other tragedies that accompany maturation, and owned and used firearms. Despite Rainbolt's repeated attempts to demonstrate that he was young, inexperienced, and immature, the record does not clearly support this claim, and his age was not significant in comparison to the aggravating factors outlined by the trial court. In truth, he is an adult, and the trial court did not err by declining to find his age as a mitigator.

# II. Appropriateness

[17]     Rainbolt next argues that the sentence was inappropriate in light of the nature of the offense and his character.

[18]     Indiana Appellate Rule 7(B) states that a "Court may revise a sentence . . . if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). In determining whether a sentence is inappropriate, we will consider numerous factors such as culpability of the defendant, the severity of the crime, the damage done to others, and a "myriad of other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008).

[19]     The maximum sentence for a murder conviction is sixty-five years and the minimum sentence is forty-five years. Ind. Code § 35-50-2-3(a). The advisory sentence is fifty-five years. *Id*. Here, the trial court imposed a sixty-year sentence with five years suspended to probation.

[20]     First, as to the nature of the offense, Rainbolt murdered his best friend by shooting him in the back of the head at close range. Then, immediately after the killing, Rainbolt attempted to cover his tracks by hiding Box-Skinner's body in a nearby shed, placing a washing machine on top of the corpse to conceal it, wedging the shed door shut so no one could get inside, disposing of the gun in

the White River, and using Box-Skinner's cell phone to mislead Box-Skinner's relatives into thinking he was perfectly fine. If the act of killing Box-Skinner was not bad enough, Rainbolt's actions following the murder only exacerbated the situation. Rainbolt's clear disregard for human life and dignity, both before and after the killing, is evidenced by his actions. Therefore, we find that the nature of the offense does not render the sentence inappropriate.

[21] Second, as to Rainbolt's character, it is true that Rainbolt had no prior criminal record aside from the truancy violation as a juvenile, which ultimately got him expelled from school. Nevertheless, Rainbolt has a long history of substance abuse involving alcohol, spice, and marijuana. *Bailey v. State*, 763 N.E.2d 998, 1004 (Ind. 2002) (holding that a history of potential criminal activity can still reflect poorly on a defendant's character at sentencing). The fact that this was his first major criminal act does not diminish its severity. Furthermore, Rainbolt first lied to Box-Skinner's family before they discovered his body, and then he lied repeatedly to the police after the fact. These varying stories and apparent lack of sincere remorse reflect negatively on Rainbolt's character. Therefore, we find that Rainbolt's character does not render the sentence inappropriate.

[22] In sum, we will not revise Rainbolt's sentence pursuant to Indiana Appellate Rule 7(B).

[23] The judgment of the trial court is affirmed.

May, J., and Tavitas, J., concur.