## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 16 2019, 6:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John Kindley
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Chad E. Smith,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 16, 2019

Court of Appeals Case No.
19A-CR-68

Appeal from the Parke Circuit Court

The Honorable Samuel A. Swaim, Judge

Trial Court Cause Nos.
61C01-1806-F5-191
61C01-1807-CM-260

**Baker, Judge.**

[1] Chad Smith appeals the sentence imposed by the trial court after he pleaded guilty to Level 5 Felony Criminal Confinement, Level 6 Felony Strangulation, and Class A Misdemeanor Invasion of Privacy, arguing that the trial court erred when it denied his motion to withdraw his guilty plea and that the sentence is inappropriate in light of the nature of the offenses and his character. Finding no error and that the sentence is not inappropriate, we affirm.

# Facts

[2] On or about June 19, 2018, Sondra Knight came home after work to find Smith, her ex-boyfriend, waiting for her. Knight and Smith did not live together. Smith had been contacting Knight repeatedly to try to convince her that they should get back together. Knight invited Smith inside, and after taking shots of alcohol, the two began to argue. Smith became aggressive, grabbing Knight by the hair and forcing her onto her bed. Smith proceeded to smother Knight by pressing his chest and stomach onto her body while placing his hands on her mouth and nose. After Smith released her, Knight ran into the bathroom. Smith followed her and pushed her into the toilet, breaking the lid. Smith then used a nearby pair of sweatpants to strangle Knight.

[3] Next, Smith forced Knight outside and into his truck. As they drove to Smith's house, he warned her that if she screamed, he would kill her. Once at Smith's house, Smith tied Knight up and stated that he was going to kill her and then commit suicide. Smith ordered Knight to write a note to her children in which she told them that she was going to die. Over the course of the evening, Smith

unplugged all the lights in his home, repeatedly tied up and untied Knight, boarded up the front and back doors of his house, and placed a solid object up against Knight's head so that she believed it was a gun. Knight pleaded for her life multiple times, asking Smith to let her go. Later that night, after Smith fell asleep, Knight tried to escape. She discovered that the doors were boarded, but she was able to pull back enough wood to squeeze through. She then ran down the street to a nearby house and called the police. Soon after, officers arrived at Smith's house and arrested him.

[4] On June 20, 2018, the State charged Smith with Level 5 felony criminal confinement, Level 6 felony intimidation, and Level 6 felony domestic battery resulting in moderate bodily injury. On June 21, 2018, the trial court issued a no contact order, barring Smith from making any sort of contact with Knight until trial. Yet, leading up to Smith's jury trial, he called Knight more than twenty times. On June 25, 2018, the State also charged Smith with Level 5 felony kidnapping, Level 6 felony strangulation, and one additional count of Level 5 felony criminal confinement. Smith has a long criminal history and had previously been convicted of kidnapping, criminal confinement, battery resulting in bodily injury, and invasion of privacy "involving women and domestic stuff[.]" Tr. Vol. II p. 95-96. On July 9, 2018, under a separate cause number, the State charged Smith with one count of Class A misdemeanor invasion of privacy based on his violations of the no contact order.

[5] On the morning of Smith's October 9, 2018, jury trial, pursuant to an open plea agreement, Smith pleaded guilty to one count of Level 5 felony criminal

confinement, one count of Level 6 felony strangulation, and one count of Class A misdemeanor invasion of privacy in exchange for dismissal of the other charges. Before accepting Smith's plea, the trial court advised Smith of the rights he was waiving by pleading guilty. The trial court also informed Smith of the crimes to which he would be pleading guilty and of the potential sentences that would be imposed. Smith stated that he understood and accepted the terms of the plea agreement, the potential sentences to be imposed, and the rights he was waiving. *Id.* at 37-41.

[6] At the December 7, 2018, sentencing hearing, Smith filed a motion to withdraw his guilty plea. During a separate hearing on that motion, Smith argued that he was not aware of the potential sentences he would face by pleading guilty and that he did not know he was pleading guilty to Class A misdemeanor invasion of privacy. The trial court denied his motion.

[7] The trial court sentenced Smith to an aggregate term of eight and one-half years to be served in the Department of Correction. Of that sentence, the trial court imposed the maximum sentence (six years) for the criminal confinement count and the maximum sentence (two and one-half years) for the strangulation count. The trial court gave Smith credit for the 170 days served in the Parke County jail, appellant's app. vol. II p. 44, thereby leaving him with no time left to serve for the invasion of privacy count. Smith now appeals.

# Discussion and Decision

# I. Guilty Plea

[8] First, Smith argues that the trial court erred when it denied his motion to withdraw his guilty plea.

[9] There is a presumption in favor of the trial court's ruling on a motion to withdraw a guilty plea. *Coomer v. State*, 652 N.E.2d 60, 62 (Ind. 1995). In determining whether the trial court erred in its ruling, we examine statements made by the defendant at his guilty plea hearing to decide whether his plea was offered freely and knowingly. *Brightman v. State*, 758 N.E.2d 41, 44 (Ind. 2001).

[10] Indiana Code section 35-35-1-4(b) establishes when a defendant can move to withdraw a guilty plea:

> (b) After entry of a plea of guilty, or guilty but mentally ill at the time of the crime, but before imposition of sentence, the court may allow the defendant by motion to withdraw his plea of guilty, or guilty but mentally ill at the time of the crime, for any fair and just reason unless the state has been substantially prejudiced by reliance upon the defendant's plea. . . . [T]he court shall allow the defendant to withdraw his plea of guilty[] . . . whenever the defendant proves that withdrawal of the plea is necessary to correct a manifest injustice.

Therefore, the trial court must grant a defendant's motion to withdraw his guilty plea if the defendant can prove that withdrawal will correct a manifest injustice.

Here, though Smith claims that he did not know he was pleading guilty to Class A misdemeanor invasion of privacy and that he was unaware of the potential sentencing ranges for his offenses, the record shows otherwise. Smith explicitly stated that he understood that he was waiving certain constitutional rights by pleading guilty and that he accepted the terms of his plea agreement. Furthermore, the trial court asked Smith numerous times if he understood that he was pleading guilty to specific charges, including invasion of privacy. Once again, Smith stated that he understood the nature of his guilty plea, the offenses listed therein, and the potential sentences to be imposed. Tr. Vol. II p. 37-41. As such, Smith's direct testimony undermines any argument that he lacked knowledge of the sentence he would receive or that he was unaware of the crimes to which he was pleading guilty. There is no indication that Smith did not offer his plea freely and knowingly and at no point would Smith's withdrawal have corrected a manifest injustice. Thus, the trial court did not err in denying Smith's motion to withdraw his guilty plea.

# II. Appropriateness

Next, Smith argues that the sentence imposed by the trial court is inappropriate in light of the nature of the offenses and his character.

Indiana Appellate Rule 7(B) states that a "Court may revise a sentence . . . if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense[s] and the character of the offender." The defendant bears the burden of persuading us

that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). In determining whether a sentence is inappropriate, we will consider numerous factors such as culpability of the defendant, the severity of the crime, the damage done to others, and a "myriad [of] other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

[14] The maximum sentence for a Level 5 felony criminal confinement conviction is six years and the minimum sentence is one year. Ind. Code § 35-50-2-6(b). The advisory sentence is three years. *Id.* The maximum sentence for a Level 6 felony strangulation conviction is two and one-half years and the minimum sentence is six months. I.C. § 35-50-2-7(b). The advisory sentence is one year. *Id.* For a Class A misdemeanor invasion of privacy conviction, the defendant "shall be imprisoned for a fixed term of not more than one (1) year[.]" Ind. Code § 35-50-3-2. Here, the trial court imposed an aggregate sentence of eight and one-half years, of which the trial court ordered the maximum six years for the criminal confinement count, the maximum two and one-half years for the strangulation count, and credit given for time served for the invasion of privacy count.

[15] First, as to the nature of the offenses, Smith committed particularly heinous and brutal criminal acts against Knight. After Knight allowed him into her home, Smith smothered her face and pressed hard on her body after grabbing her and forcing her onto a bed. Then, after chasing Knight into the bathroom, slamming her into the toilet, and strangling her with a pair of sweatpants, Smith forced Knight into his car so they could drive to his home. There, Smith continued to tie up, untie, berate, threaten, and essentially torture Knight for the rest of the

evening, even going so far as to order Knight to write a note telling her children that she was going to die. Moreover, Smith unplugged all the lights in his home and boarded up the doors to prevent Knight from escaping. This experience has caused Knight severe psychological trauma, and the record evidences Smith's deliberate attempt to harm Knight without any justification. Therefore, we find that the nature of the offenses does not render Smith's sentence inappropriate.

[16]  Second, as to Smith's character, Smith's actions following his arrest are telling. After the trial court issued a no contact order against him, Smith nevertheless called and harassed Knight more than twenty times before the time of trial. Additionally, the record shows that this is not his first criminal conviction. Smith had previously been convicted of the very crimes (criminal confinement and invasion of privacy) to which he pleaded guilty in this case, demonstrating poor and reprehensible character. *See Bailey v. State*, 763 N.E.2d 998, 1004 (Ind. 2002) (holding that a history of criminal activity, even if those criminal actions did not lead to convictions, reflects poorly on a defendant's character at sentencing). Moreover, while Smith contends that the trial court inappropriately imposed the maximum sentences for two counts, the trial court's reasoning is explicit:

> Ms. Knight was subject to a night of torture and terror for several hours[.] . . . The Court also finds that [Smith] does have a history of criminal behavior as outlined in the presentence report. The Court would also note the evidence presented today that [Smith] attempted to contact . . . the victim in excess of twenty times after a No Contact Order was issued. Now, the Court has considered the fact that [Smith] has not been in trouble, as argued by Defense counsel, for sixteen years and, I guess, the Court would've been

willing to give you, Mr. Smith, some credit for that time, until today's hearing, when you continued to try to shame the victim after you've already pled guilty. So, really, none of --- nothing you said today makes much sense. There was no reason presented for the victim to lie about any of this. There's no motive for her to do any of this. In fact, there would be every reason for a lot of women not to have the courage to come forward with any of this. So you're not taking any responsibility for the crimes that you committed and pled guilty to. Convictions have already been entered. I know you're not low intelligence. You graduated high school. I see no reason why you wouldn't understand what's going on. Your conduct in the Courtroom, continually shaking your head, looking at the victim, also I find that to be threatening[.] . . . I don't think you have any remorse whatsoever for the acts you've committed.

Tr. Vol. II p. 99-100. Even though Smith pleaded guilty, the trial court had ample reasons to impose the maximum sentences for those two counts. Therefore, we find that Smith's character does not render the sentence inappropriate. In sum, we will not revise Smith's sentence pursuant to Indiana Appellate Rule 7(B).

[17] The judgment of the trial court is affirmed.

Najam, J., and Robb, J., concur.