## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2019, 9:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa A. Moody
Princeton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kwin T. Boes,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 30, 2019

Court of Appeals Case No.
19A-CR-1755

Appeal from the Gibson Superior Court

The Honorable Robert D. Krieg, Judge

Trial Court Cause No.
26D01-1805-F1-511

**Baker, Judge.**

[1] Kwin Boes appeals the sentence imposed by the trial court after he pleaded guilty to Level 2 felony domestic battery resulting in death to a minor, arguing that the trial court improperly relied on two aggravators and that his sentence is inappropriate in light of the nature of the offense and his character. Finding no error and the sentence not inappropriate, we affirm.

## Facts

[2] P.B. was born to Boes and Jamie Hartley on February 14, 2018. Boes and Hartley have never married, but they co-parented P.B. together. On May 3, 2018, Hartley left three-month-old P.B. in Boes's care while she took her other children to school. Later, Hartley received a phone call from a distraught Boes telling her that P.B. was unresponsive and that his body had gone limp. The Gibson County Central Dispatch received a similar 911 call from Boes.

[3] First responders arrived and rushed P.B. to St. Vincent Hospital in Evansville. After it was determined that there was internal bleeding in P.B.'s brain, P.B. was transported to Riley Children's Hospital (Riley) in Indianapolis. Medical personnel at Riley concluded that P.B. "suffered from hemmorhage [sic] to the brain, hemorrahage [sic] to both eyes, and bruising to the left side of the penis." Appellant's App. Vol. II p. 24. Additionally, P.B. had a ligament strain in his neck.

[4] That same evening, police interviewed Boes. Boes told them that he had fed P.B. and placed P.B. on a "boppy pillow." *Id.* at 23. Then, Boes fell asleep, but was later awakened by the sound of P.B. crying. Boes went to check on P.B.

and discovered P.B. lying on his back on the living room floor. According to Boes, when he went to pick P.B. up off the floor, P.B.'s breathing was abnormal, he was no longer crying, and his body was limp. Boes believed that P.B. had fallen out of his boppy pillow, striking his head on the coffee table and "then falling backwards to the ground." *Id.* at 24.

[5] However, according to Riley, P.B.'s fall, as described by Boes, "would not be expected to cause the diffuse nature of injures [sic] to the brain like what was seen in P.B." *Id.* After three days, on May 6, 2018, P.B. was pronounced dead at Riley. P.B.'s doctors determined that P.B. had suffered irreparable abusive head trauma, and the preliminary findings of the autopsy report concluded that P.B.'s death was caused by blunt force traumatic injuries to the head.

[6] On May 9, 2018, the State charged Boes with one count of Level 1 felony aggravated battery resulting in death and one count of Level 1 felony neglect of a dependent resulting in death. Then, on June 12, 2019, the State filed one additional count of Level 2 felony domestic battery resulting in death to a minor. That same day, Boes entered into an open plea agreement, pursuant to which Boes agreed to plead guilty to Level 2 felony domestic battery resulting in death to a minor in exchange for dismissal of the other charges.

[7] At Boes's July 3, 2019, sentencing hearing, the trial court found the following mitigators: (1) Boes's willingness to plead guilty; and (2) the hardship that Boes will experience after being released from a long prison sentence. The trial court also found the following aggravators: (1) Boes's prior criminal history; (2)

Boes's moderate to high risk to reoffend based, in part, on Boes's Indiana Risk Assessment System (IRAS) score; (3) the fact that Boes was on probation at the time he committed this crime; and (4) the extremely young age of the victim. Thereafter, Boes was sentenced to twenty-five years, with nineteen years executed in the Department of Correction (DOC) and six years suspended to probation. Boes now appeals.

# Discussion and Decision

## I. Aggravators

First, Boes argues that the trial court improperly relied on two aggravators during sentencing—namely, his IRAS score and the victim's extremely young age. Sentencing decisions are left to the sound discretion of the trial court. *Smallwood v. State*, 773 N.E.2d 259, 263 (Ind. 2002). We will reverse a sentencing decision involving the use or non-use of certain aggravating factors only if the decision is clearly against the logic and effect of the facts and circumstances before the trial court and all reasonable inferences drawn therefrom. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218.

### *IRAS Score*

In *Malenchik v. State*, our Supreme Court explained the role of risk offender assessment instruments, like the IRAS, for sentencing:

> The results of [a risk offender assessment instrument] are not in the nature of, nor do they provide evidence constituting, an

aggravating or mitigating circumstance. In considering and weighing aggravating and mitigating circumstances shown by other evidence, however, trial courts are encouraged to employ evidence-based offender assessment instruments, . . . as supplemental considerations in crafting a penal program tailored to each individual defendant.

928 N.E.2d 564, 575 (Ind. 2010). In other words, a trial court may not rely solely on IRAS scores as independent aggravators in their sentencing schemes, but may consider and incorporate those scores into their overall assessment of a criminal defendant's chances for recidivism. *Id.* at 569-70.

[10] Here, the trial court stated, in pertinent part, that:

> So - and this doesn't seem to be getting any better, which is what the assessment is saying. Using the tools of the assessment says that it looks like that - for whatever value that is and how we can or can't predict the future, that's what the Supreme Court of Indiana asked us to rely upon, in part, and we look at it and the assessment says that you have gone from moderate risk to reoffend to high risk to reoffend, so that has to be considered an aggravator. I don't give it a lot of weight because I don't know how to predict the future and how is your behavior going to change when you mature just from age and how are you - how's your behavior going to change when you've been in prison for however many years, I don't know, but nonetheless, today, the assessment says that you have gone from a moderate risk to reoffend to a high risk to reoffend.

Tr. Vol. II p. 21-22.

[11] So, while the trial court labeled Boes's risk to reoffend as an aggravator by relying on his IRAS score, it did not do so exclusively and did not give it very much weight for purposes of sentencing. Rather, in its own words, the trial

court relied on the assessment risk instrument only in part. Later on, the trial court considered the IRAS score along with Boes's extensive criminal history, his multiple violations of probation, and the fact that his criminal behavior became more severe and violent as time progressed. Thus, while the trial court's aggravator language was less than clear, its actual sentencing order was not. If anything, the trial court followed the strictures of *Malenchik*, utilized the IRAS test as a supplemental tool, and "employ[ed] such results in formulating the manner in which [Boes's] sentence is to be served." *Malenchik*, 928 N.E.2d at 575. In other words, the trial court did not err.[1]

### *Extremely Young Age*

[12] To convict Boes of Level 2 felony domestic battery resulting in death to a minor, the State had to prove beyond a reasonable doubt that Boes knowingly or intentionally touched P.B.—a family member under fourteen years of age— in a rude, insolent, or angry manner and that the touching resulted in death. Ind. Code § 35-42-2-1.3(a)(1), -1.3(f)(1). As such, P.B.'s age is an element of the crime.

[13] While it is undisputed that "elements of a crime cannot be used to enhance a sentence," *Morgan v. State*, 675 N.E.2d 1067, 1073 (Ind. 1996), "a trial court

---

[1] Even if the trial court did err, the error was, at most, harmless. Reliance on an improper aggravator is harmless unless the defendant can show that the trial court would have imposed a different sentence absent the aggravator. *See Kayser v. State*, 131 N.E.3d 717, 722 (Ind. Ct. App. 2019). And here, there were multiple other valid aggravating factors upon which the trial court relied in imposing a longer sentence. Thus, we are confident that the trial court would have rendered the same sentence irrespective of this aggravator.

may consider age as an aggravator only if the youth of the victim is extreme," *Reyes v. State*, 909 N.E.2d 1124, 1128 (Ind. Ct. App. 2009). And in this instance, we have no issue holding that the trial court was within its discretion to consider P.B.'s age during sentencing. At the tender age of barely three months old, P.B. suffered severe damage to vital body parts, ultimately leading to his death. Given these particular circumstances, we hold that the trial court did not err when it relied on P.B.'s extremely young age as an aggravator.

# II. Appropriateness

Next, Boes argues that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and his character.

Indiana Appellate Rule 7(B) states that a "Court may revise a sentence . . . if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The question is not whether another sentence is more appropriate, but whether the defendant's specific sentence is inappropriate. *Steinberg v. State*, 941 N.E.2d 515, 535 (Ind. Ct. App. 2011). In determining whether the sentence is inappropriate, we will consider numerous factors such as culpability of the defendant, the severity of the crime, the damage done to others, and a "myriad [of] other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The defendant bears the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[16]     For a Level 2 felony offense, the maximum sentence is thirty years, and the minimum sentence is ten years. Ind. Code § 35-50-2-4.5. The advisory sentence is seventeen and one-half years. *Id.* Here, the trial court sentenced Boes to nineteen years executed in the DOC and six years suspended to probation, for an aggregate term of twenty-five years.

[17]     First, as to the nature of the offense, Boes has committed a truly heinous act. Pursuant to the conclusions of the Riley doctors and the autopsy report, three-month-old P.B. suffered blunt force traumatic head injuries that left him limp, unconscious, unable to breathe, physically unresponsive, and, ultimately, dead. Even more appalling is the fact that Boes lied to the police in an attempt to frame the incidents of that evening as an accident. Because of Boes's conduct, his extremely young and vulnerable child died a violent death. Therefore, we find that the nature of the offense does not render Boes's sentence inappropriate.

[18]     Next, as to Boes's character, Boes has a long juvenile and criminal history. As an adult, Boes has been previously convicted of operating a motor vehicle without a license, theft of a firearm, criminal mischief, and intimidation. *See Bailey v. State*, 763 N.E.2d 998, 1004 (Ind. 2002) (holding that a history of criminal activity can reflect poorly on a defendant's character at sentencing); *see also Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007) (holding that "it is appropriate to consider such a [criminal] record as a poor reflection on the defendant's character, because it may reveal that he . . . has not been deterred even after having been subjected to the police authority of the State[]"). He also

received numerous juvenile delinquency adjudications dating back to when he was just fifteen years old.

[19] Moreover, for many of his criminal convictions, Boes was placed on probation and then subsequently violated the terms of his probation. Even worse, Boes was on probation at the time he committed this grotesque crime, thereby reinforcing the notion that he has yet to see the error of his ways. Therefore, we find that Boes's character does not render his sentence inappropriate. In sum, we will not revise Boes's sentence pursuant to Indiana Appellate Rule 7(B).

[20] The judgment of the trial court is affirmed.

Riley, J., and Brown, J., concur.